## THE PENNSYLVANIA COMPANY

*v.*

## PATRICK LYNCH.

1. NEGLIGENCE — *as between master and servant — contributory negligence.* In an action by a servant, against his employer, to recover damages for a personal injury caused by the use of defective machinery or materials employed in the business, the observance of due care and caution on the part of the servant is indispensable to his right to recover.

2. While there is an implied contract between employer and employee, that the former shall procure and keep suitable tools, implements, means, etc., with which to perform the labor required of the latter, and also that the latter shall be advised by the former of all the dangers incident to the service of which the latter is not cognizant, yet the failure of the employer in this regard furnishes no excuse for the conduct of the employee who voluntarily incurs a known danger. He must himself use due care and caution to avoid injury, and if he enters a service with full knowledge of its perils, without requiring that it first be made safe, he assumes the risk and must bear the consequences.

3. Where a servant, employed in removing freight from one car into another, used a common car door made of pine boards, which was laid from one car door to another, and while taking down a bale of wool he and his fellow servant let the same fall upon a truck on the door, which caused the door to break, giving him a fall and inflicting a severe personal injury, when the proof showed that such servant had been engaged nearly two years in the business and had frequently before used such a door for a platform, and knew the danger in its use, and its defects, and the employer gave no direction to use such a platform, there being others in the yards of better construction and stronger materials which might have been used, and the employer not knowing that such a one was used at the time of the accident, and the servant never objected to the use of such platforms or suggested they be changed and others substituted, the negligence of the servant in continuing to use such a platform, knowing the same to be unsafe, is of such a character as to defeat a recovery by him against the employer.

4. PRACTICE IN SUPREME COURT — *as to time of considering objection to bill of exceptions.* Where the appellee makes an objection to a bill of exceptions, and the objection is decided upon his motion to strike the bill of exceptions from the record, it is not properly a subject of consideration upon the final hearing of the cause.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

90  333
29a 509

90  333
34a 320

90  333
36a 203
36a 423
36a 455

90  333
143  256
41a  89

90  333
149  341
155  76
44a 467
45a 137

90  333
49a 367

90  333
46a  30
47a 468
48a 568

90  333
167  564
67a 154

90  333
69a 215

90  333
75a 450

90  333
176  128
77a  49

90  333
178  567

90  333
183  294

90    333
d90a [1] 52

90    333
93a [2] 141

90    333
94a [2] 187

90   333
97a [2] 363

90  333
213 [3] 316

Messrs. F. H. & F. S. WINSTON, for the appellant.

Mr. LEWIS L. WOOD, and Messrs. MONROE, BISBEE & BALL, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

On the 25th of November, 1873, Patrick Lynch, an employee of the Pennsylvania Company, whilst engaged with a co-employee, named John Ellis, in transferring a large bale of wool from one freight car to another occupying parallel sidetracks, was thrown upon the ground with great violence, in consequence of the breaking of the temporary platform connecting the cars which they were using to effect the transfer. His shoulder was thereby dislocated in such manner as to permanently impair its strength; and he was also otherwise injured, but not seriously or permanently.

The present action is by Lynch against the company for those injuries, based upon its negligence in furnishing a proper and safe platform. The judgment of the court below is for $6000, and the question we shall consider here is, can that judgment be sustained.

The ruling of the court below, in giving and refusing instructions, in effect ignores an indispensable element in appellee's right to recover—the observance of due care and caution on his part to have avoided the injury of which he complains. This is alleged in the declaration, and its absence, if disclosed by the evidence, is fatal to his right to recover damages.

While there is an implied contract between employer and employee that the former shall procure and keep suitable tools, implements, means, etc., with which to perform the labors required of the latter, and also that the latter shall be advised by the former of all the dangers incident to the service, of which the latter is not cognizant, yet the failure of the employer in this regard furnishes no excuse for the conduct of an employee who voluntarily incurs a known danger.

He must himself use due care and caution to avoid injury. If he has full knowledge of all the perils of a particular service, he may decline to engage in it, or require that it shall first be made safe; but if he does thus enter it, he assumes the risk and must bear the consequences. As was observed in *Priestly* v. *Fowler*, 3 M. & W. 1, "The mere relation of master and servant can never imply an obligation on the part of the master to take more care of a servant than he may reasonably be expected to take of himself." And so it is held that where the defects in the machinery or other appliances are as well known to the servant as to the master, the servant must be regarded as voluntarily incurring the risk resulting from its use, unless the master, by urging on the servant or coercing him into danger, or in some other way, directly contributes to the injury. *Assop* v. *Yates*, 2 H. & N. 768; *Gibson* v. *Erie Railway Co.* 63 N. Y. 453; *Lanning* v. *New York Central Railroad Co.* 49 id. 534. This is fully sustained by this court in *Camp Point Mfg. Co.* v. *Ballou, Admr.* 71 Ill. 417, and *in arguendo* in *Honner* v. *Illinois Central Railroad Co.* 15 id. 550. The principle is also asserted in *Columbus, Chicago and Indiana Central Railway Co.* v. *Troesch*, 68 id. 552. There is nothing in *Chicago and Alton Railroad Co.* v. *Shannon*, 43 Ill. 339, *Chicago and Northwestern Railroad Co.* v. *Swett*, 45 id. 197, *Illinois Central Railroad Co.* v. *Phillips*, 49 id. 234, *Toledo, Wabash and Western Railway Co.* v. *Fredericks*, 71 id. 294, and *Toledo, Wabash and Western Railway Co.* v. *Ingraham*, 77 id. 309, cited by counsel for appellee, in conflict with this rule. In those cases the employee had not the necessary facilities for obtaining a knowledge of the peril to which he was exposed, to have enabled him to avoid it, and he was chargeable with no want of due care.

The material facts here are these: The breaking of the platform was caused by letting the bale of wool (which weighed some 600 or 650 pounds) from a slight elevation it occupied on a pile of like bales in the car, down on to a truck resting on the platform, with a jerk or fall. It is not entirely

clear that appellee and his co-laborer were not guilty of negligence in the manner in which they thus let the bale down, but no stress need be laid on this. The platform used was a common grain car door, four feet and a half long, three feet wide, and three-fourths of an inch thick—composed of pine boards, dressed on one side, with cleats or strips in the centre and near the ends to which the boards were nailed, and having also strips nailed on near the extremities of the sides. Lynch had been in the employ of the company, in this kind of work, one year and nine months, when he received his injury. During that time, he and those with whom he worked had used no other kind of platform to transfer freight than the one in use when he was injured. There is evidence that there were other platforms of better construction and stronger material, in the yards, which might be used when desired, but it does not appear that appellee had knowledge of this. It is shown, however, that the platforms used could be, and sometimes were strengthened by placing a longer and shorter door together—the shorter on top—and nailing three-cornered pieces of timber of proper thickness at the ends so as to make an inclined plane for the ascent of the trucks, in overcoming the raise caused by the additional doors. It is admitted the men were all supplied with nails and hammers to enable them to fix their platforms, and whether this mode of strengthening the platform was known to appellee or not, it is so simple and obvious that he ought to have known it, if none better was suggested.

The platform in use by Ellis and appellee was selected by Ellis, appellee standing by and watching him select and place it, and afterwards inspecting it and testing its sufficiency to his own satisfaction. They were not directed to use this platform by any one representing the company, or, indeed, any platform. Ellis and appellee were simply directed by a foreman to transfer the wool from the one car to the other, and in selecting the material and making the platform, they exercised their own judgments uninfluenced by others. No one pre-

vented their making it stronger, had they chosen to have done so.  The door was selected because that was the customary manner of making the platform, and they assumed it was safe, having the weight before their eyes which it was to support, because other doors of like appearance had previously sustained equal or greater weight.  Appellee was as well informed, from all we can see, in regard to the capacity of such doors to sustain weight, their liability to break, etc., as any other employee of the company.

He says, "Most of the time, I worked at transferring freight from car to car; the freight transferred was of all kinds—flour, tea, silk, iron, nails, dry goods, pig metal; some of these goods were heavy and some light; freight was transferred by trucking it over the platform from one car to another; as a general thing, the platforms were grain doors, similar to the one we were using that day; during the time I was there, I used no other than grain doors,—I am sure of that; principally, during the year and nine months I was working for the defendant, I worked every day."  And again, "No accident like this occurred to me before while using this; I had never fallen from one of these platforms by its breaking; I had before transferred wool of this kind, in this way, and the platform did not break;  *  *  *  I have seen them break; seen trucks run through them with the wheels; I knew they did break; have seen them break in our gang; the wheel of the truck went through;  *  *  *  as a general thing, they used to break nearly every day; I never saw it break across the middle," etc.  "Have known of grain doors being pushed off the car, and dropping down."  And again, "Lots of cases; you know how to judge of pine boards, especially in the winter time; when frost and snow are on them they are liable to break quicker."

This record will be searched in vain for evidence of any one having a more thorough knowledge of the capacity of these platforms and the accidents incident to them than had appellee.  He never objected to their use, and he made no sugges-

tion to his superiors that they be changed and others substituted. If appellant was negligent in not furnishing different platforms, in what respect does that negligence differ from appellee's negligence in continuing to use them without objection and without an effort to change or improve them? If appellant's negligence consisted in continuing to use them, knowing they were unsafe, who connected with the company possessed that knowledge in a higher degree than appellee? He, no less than all other employees, owed a duty to his employer to call attention to imperfections and defects in the implements in use in his line of employment, imperiling the safety of the employees or interfering with their duties,—yet he is silent. He voluntarily selects a platform which he deems sufficient for the particular use, and the sequel proves his selection was not well made. If that platform, in his opinion, was not sufficient, he was at liberty, and it was a duty he owed both to himself and his employer, to make it sufficient. A recovery, based on this evidence, would seem to be rewarding a party for his own negligence, rather than compensating him for loss sustained by reason of the negligence of another.

There is, in our opinion, no ground for a recovery by appellee against appellant.

The objection taken by appellee to the bill of exceptions was decided when his motion was made to strike it from the record, and it can not, therefore, now properly be a subject of consideration.

The judgment is reversed.

*Judgment reversed.*