THE EAST ST. LOUIS PACKING AND PROVISION CO.

v.

BARNEY McELROY.

*Master and Servant—Personal Injury—Contributory Negligence—Tools and Appliances—Sufficiency of—Special Finding.*

1. A master is bound to use reasonable care and prudence in providing suitable tools and appliances for the use of his servants.

2. A master is not an insurer of the safety and security of his employes while engaged in the line of their duty.

3. If a servant has knowledge of the defective and unsafe character of appliances which must be used in and about the work he is employed to perform, and persists in his work without objection, he is guilty of contributory negligence and can not recover for injuries sustained because of the use of such defective appliances.

4. In an action brought by a servant to recover from his employer for injuries caused by ice jumping from an inclined slide, which is alleged to have been improperly constructed, this court holds, upon a review of the evidence, that the plaintiff was guilty of contributory negligence, and that the verdict for him should have been set aside.

[Opinion filed January 10, 1889.]

APPEAL from the City Court of East St. Louis; the Hon. B. H. CANBY, Judge, presiding.

Mr. M. WILLARD, for appellant.

It is held in this State that when an employe has an opportunity to make himself acquainted with the risks of the service and fails to do so, it is such negligence as will prevent a recovery, and consequently, in a case where he has such knowledge, the reason for holding he can not maintain a suit is much stronger. The fact is, there were no dangers except such as the plaintiff was bound to see. He could not avoid knowing that the ice came down the skids with some degree of force, and that it was necessary to keep out of the way- and also that it did not come regularly. Hence, on cross-examination, the plaintiff was compelled to admit that he did

not discover any new danger in the work, neither while engaged in the service nor after he got hurt. He knew every peril and risk before, and for the very good reason that all the dangers were obvious to an ordinary understanding. If he did not realize that he must have been stupid indeed; but he perceived the risks of the service, and the case is one where the employe, knowing every peril, carelessly exposes himself and is injured through his own fault. To sum it up, the situation was one without a lurking danger and where the servant says he knew all the risks, and that there can be no recovery in such a case is too well settled for legal discussion.

Under this head the following cases will suffice: Simmon's Adm'r v. C. & T. R., 110 Ill. 340; C. & E. R. v. Geary, 110 Ill. 383; Penn. Co. v. Lynch, 90 Ill. 333; St. L. & S. E. R. v. Britz, 72 Ill. 256.

The rule here announced is, that if the servant has an opportunity to make himself acquainted with the risks of his service, but fails to do so, and is injured in consequence, or if he voluntarily assumes a peril known to him and is injured, he can not recover.

Messrs. R. A. HALBERT and FLANNIGEN & RAFTER, for appellee.

It is a rule of law that the master, whether a natural person or a corporate body, is under obligation not to expose his servant, when conducting the master's business, to perils or hazards against which he may be guarded by proper diligence upon the part of the master, and to that end the master is bound to observe all the care which prudence and the exigencies of the case or the situation require in providing the servant with machinery or other instrumentalities adequately safe for the use of the latter. And this, of course, includes a safe place in which the servant is to do the master's work. Wharton on Negligence, Sec. 211 and others; Whitaker's Smith on Neg., 125 et seq.; Wood, Master and Servant, Sec. 329 et seq.; 2 Thompson on Negligence, p. 972, and note.

This rule is announced in the Swett case, 45 Ill. 197, and in every case in our State where the question has since arisen.

We know of no case where the questions involved in the case at bar have been so fully discussed upon authority and principle as that of Indiana Car Co. v. Parker, 100 Ind. 181. The law is, that the servant may continue the service, even if he know of defects, unless they be such as necessarily and inevitably expose him to injury. Snow v. Housatonic R. R. Co., 8 Allen, 450.

GREEN, P. J. This suit was brought by appellee to recover damages for personal injuries alleged to have resulted from the negligence of appellant. The jury, by its verdict, found defendant guilty, and assessed plaintiff's damages at $1,999.99, the full amount claimed, and also found, in response to questions asked by defendant in writing, as follows:

"1st. Was the skidway or slide safe and sufficient? Ans. It was not.

"2d. Did the plaintiff know what kind of conveyor the skid was, and the condition it was in? Ans. He did not."

Judgment was entered on the verdict, to reverse which defendant took this appeal. It is averred in the declaration that plaintiff, while employed as a laborer by defendant, and in the performance of his duty as such, by the direction of defendant's officers and servants, in storing ice in the cooler of defendant's ice house, was required to stand at the lower end of a conveyancer slide for the purpose of receiving and removing into the cooler the ice coming down said slide; avers duty of defendant to exercise care and prudence in providing good, safe and proper slides for conveying ice to the point where plaintiff should receive it, so that ice should not run off said slide before reaching said point; avers defendant neglected this duty, and negligently and carelessly failed to provide a good, safe and proper slide sufficient to conduct said ice safely to said point, all which defendant knew or might have known by the exercise of reasonable care; and while plaintiff was standing alongside of said conveyor slide, and in the exercise of due care on his part, and without knowledge of the insufficiency of said slide, a large piece of ice, on account of such insufficiency, ran off the slide, struck plaintiff, and thereby he

received the injuries complained of. It appears, from the evidence, the cooling room in defendant's packing house was supplied with ice from an upper story by means of an incline or skid twenty-four inches wide, with sides about three inches high, down which the ice slid with considerable velocity for a distance of about fifty feet to a door at the end of a hallway, from which point through the center of the hall on the floor extended an oak plank runway, or slide, with angle iron on each edge of the plank about an inch high, and along and on this structure the ice coming down the incline slid some distance, and was received and pushed along the hallway by men on the side of the runway to openings where other men received and dropped it through to the cooling room below. The ice did not come down the incline regularly and continuously, but sometimes a number of pieces would be slid down in rapid succession; then an interval of some minutes would elapse before any more came down, and when necessary to give men at the cooling room time to clear away the ice accumulating there, word was sent by men in the hallway to those above to suspend supplying ice for a time. Sometimes, when ice became blocked on the runway, a piece would jump off the slide, and under such circumstances if the piece did not fall entirely off, but a portion remained on the slide, sometimes another piece coming down and striking it would jump off.

Ice coming down the incline could be seen all the way down by those working in the hallway, and they could readily hear it coming as it descended. The negligence alleged and claimed to have caused the injury, was the failure to provide this runway with sides of sufficient height to prevent ice from jumping off when sliding along with the speed acquired in its descent; but it also appears these same structures had been in use there, and had been operated in the same way by employes for a number of years; yet, until plaintiff was hurt, no accident had occurred and no one working there had been injured. At the time plaintiff was hurt this runway was in good condition and repair; all the witnesses testifying on this point, except plaintiff, concur in saying it was sufficient and safe and that there was no danger to one working in that hallway, pushing

ice, if he used reasonable care to look or listen for the ice coming down; plaintiff had been at work in the packing house, off and on, as he expressed it, for about eight years.   He admits he had seen the incline and men working there, and ice going down many times, and had passed by this runway in the hall, and had seen men at work there many times.   By other testimony, also, it appears he was quite familiar with these structures and the manner of using them.   On the Friday and Saturday next preceding the day he was hurt, plaintiff worked on the upper floor pushing ice, and worked on Sunday two hours in the hallway.   On Monday morning he went there again, and about half past seven o'clock met Jones, who had charge of the cooling department, who asked him to go down in the cooling room and pull ice away from the hole and keep it from getting blocked; but plaintiff said he would sooner go home than go down there; that he was subject to rheumatism. Jones replied, "That is a better place for you; you are accustomed to work down there, and the other men are not acquainted with it;" but plaintiff said he would go home sooner than go down there.   Jones then said, "Stay there then."   Plaintiff then voluntarily took his position near the foot of the incline in the hallway, and about an hour after a piece of ice jumped off the slide.   He went across to start it along toward the opening, with his back to the incline, and while in this position and pushing this piece of ice with an ice hook, as he testifies, another piece of ice jumped off behind him, struck him and caused the injury complained of.   He also testifies he did not discover anything about this ice slide while working there he had not known before.

In the view we take of this case it would be superfluous to comment upon the question of plaintiff's contributory negligence, or the amount of damages allowed; and the contention on behalf of appellee is correct, that the master is required to use reasonable care and prudence in providing the servant with safe and suitable appliances and instrumentalities to use in the work he is employed to do.   This is the primary duty of the master, imposed upon him by the law.   The master is not, however, an insurer of the safety and security of the

servant while performing the work, and the latter may, by his own acts, absolve the master from all liability to him for injury resulting from the use of defective and unsafe instrumentalities provided by the master. If the servant has knowledge of the unsafe and defective character of appliances that must be used in and about the work he is employed to perform, and with this knowledge and without objection, persists in doing such work, and thus voluntarily exposes himself to extra peril, and is injured by reason of the use of such defective appliances, he can not recover for such injury. This rule, applied to the facts in the record, precludes plaintiff from the right to recover. By his admission and other testimony it appears he knew all about the work he was required to do, and the character, as to safety and sufficiency, of the structure claimed to have been unsafe. He must have known by observation the ice came down the incline with velocity and force and at irregular intervals, and that men employed, as he was, in the hallway, were exposed to accident, if careless. In short, it is quite apparent he knew the peril and hazard incident to the work he was performing, and with this knowledge chose to do this work rather than other work which he was accustomed to, there offered him by Jones. Under this state of facts plaintiff had no right of action against defendant. Simmons v. C. & T. R., 110 Ill. 340; C. & E. R. v. Geary, 110 Ill. 383; Penn Co. v. Lynch, 90 Ill. 333; St. L. & S. E. R. v. Britz, 72 Ill. 250.

The special finding of the jury in answer to the second question was not supported by the evidence, and the general verdict also was wrong and should have been set aside.

The judgment is reversed, and we find no reason for remanding the cause.

*Judgment reversed.*