## Illinois River Paper Co. v. Albert.

1. *Negligence—Danger Known and Obvious.*—Where dangers are known and obvious, if a person voluntarily incurs them, he can not recover for injuries suffered in consequence, for this would amount to compensating him for his own negligence.

2. *Pleading and Proofs—Allegations Not Sustained.*—An allegation in a declaration, that the superintendent of a mill wrongfully directed and commanded the plaintiff to belt a pulley on a shaft while a friction clutch pulley on the same shaft was in rapid motion, without shutting down the mill, and that the plaintiff was not guilty of any negligence in obeying the command, is not sustained where the proofs show that the plaintiff voluntarily undertook to belt the pulley himself, without any direction or suggestion of the superintendent tending to deprive him of the free exercise of his judgment, or cause him to encounter a risk which he was otherwise unwilling to assume.

3. *Master and Servant—Duty to Procure Safe Machinery.*—To require that machinery shall be free from doubt, in respect to safety in use, is equivalent to requiring that it shall be perfectly safe. It is a matter of common knowledge that machinery, generally, is not absolutely safe in use, and there is no requirement in law that an employer shall furnish such machinery.

4. *Practice—Offers of Proof—Exclusion of the Jury.*—Where offers of proof are to be made, the trial court may exclude the jury and require that such offers be made out of its hearing.

Memorandum.—Action for personal injuries. Appeal from the Circuit Court of La Salle County; the Hon. Charles Blanchard, Judge, presiding. Heard in this court at the May term, 1893. Opinion filed December 12, 1893.

The statement of facts is contained in the opinion of the court.

APPELLANT'S BRIEF, McDOUGALL & CHAPMAN, ATTORNEYS.

When the defects in the machinery or other appliances are as well known to the servant as to the master, the servant must be regarded as voluntarily incurring the risk resulting from its use, unless the master, by urging on the servant or coercing him into danger, or in some other way, directly contribute to the injury. Pennsylvania Co. v. Lynch, 90 Ill. 333; Assop v. Yates, 2 H. & N. 768; Gibson v. Erie Ry. Co., 63 N. Y. 453; Laning v. N. Y. Central Ry. Co., 49 N. Y. 534; Camp Point Mfg. Co. v. Ballou, 71 Ill. 417; Honner v. Ill. Central R. R. Co., 15 Ill. 550; C. C. & I. C. Ry. Co. v. Troesch, 68 Ill. 552.

The duty to furnish safe machinery does not require that the machinery used shall be the best and latest improved of its kind, but only that it shall be reasonably safe and suitable for the purpose. 14 Am. & Eng. Ency. of Law, 892; Shearman & Redfield on Negligence, Sec. 87.

The rule seems well established, that an employe assumes all ordinary hazards arising from the performance of the duties of his voluntary engagement, and if he is injured by any of the ordinary perils of the service, the law will afford him no remedy. C., B. & Q. R. R. Co. v. Clark, 2 Brad. 596; C., B. & Q. R. R. Co. v. Abend, 7 Brad. 130; W. St. L. & P. Ry. Co. v. Conkling, 15 Brad. 157; Clark v. C., B. & Q. R. R. Co., 92 Ill. 43; Missouri Furnace Co. v. Abend, 107 Ill. 44.

APPELLEE'S BRIEF, BREWER & STRAWN, ATTORNEYS.

As to the sufficiency of the order given by the superintendent to place the belt on the pulley while the counter shaft and friction clutch were in motion, we call attention to the following cases: Stephens v. Hannibal & St. J. R. R. Co., 96 Mo. 207; Sioux City & P. R. R. Co. v. Smith, 22 Neb. 775; McDade v. Washington & G. R. R. Co., 3 Cent. Rep. 794; 5 Mackey, 144; Neilon v. Marinette & M. Paper Co., 75 Wis. 579; Nadau v. White River Lumber Co., 76 Wis. 120; Lalor v. C., B. & Q. R. R. Co., 52 Ill. 401; Lake S.

Illinois River Paper Co. v. Albert.

& M. S. R. R. Co. v. Lavalley, 36 Ohio St. 221; Patterson v. Wallace, 1 Macq. 748; Clark v. Holmes, 7 Hurlst. & N. 937; Grizzel v. Frost, 3 F. & F. 622; found in note 77 Am. Dec. 2 24.

Opinion by the Court, Cartwright, J.

Appellant was the owner of a paper mill at Marseilles, Illinois, called The New Jerusalem. Thomas Tucker was the superintendent of the mill, and appellee was employed to work under his direction. Appellee's duties were to look after the machinery and make necessary repairs, and to set up new machinery and put it in working order. He had previously worked in another paper mill at Marseilles, eight or nine months, and also in a mill at Lafayette, Indiana, at the same kind of work, and had been engaged in this mill about eight days when he met with the accident which is the subject-matter of this suit. At that time a new counter shaft was being put in. There were two large pulleys on the shaft, each twenty-four inches in diameter, with ten inch face, and also a friction-clutch pulley eighteen inches in diameter. One large pulley was keyed fast to the counter shaft at the east end, and received the power. It was called the drive pulley. The other large pulley was loose on the shaft ten or twelve inches west of the drive pulley. Next to the loose pulley, on the west, was the friction-clutch pulley, which was keyed to the shaft. When the drive pulley was connected with the power it turned the shaft and the friction-clutch pulley, but the loose pulley stood still, except when the friction-clutch pulley was thrown into gear so as to clutch and turn it. The plan of the work had been designed by Allen Gum, who preceded appellee in the same line of employment, and a shaft had been put in by him, but the pulleys had not then been received. Appellee commenced work on the counter shaft September 4, 1892. He found that the shaft that was in, was too short, and took it out and put in a longer one. He also moved one stand. He put on the pulleys and on September 6th, they were ready for the belts.

The drive pulley was to receive a belt from the line shaft in the basement, which communicated the power, and the loose pulley was to be belted to a line shaft above to drive some fans. Appellee put the belts on both pulleys, but found that they were too loose, and took them off, and cut about two inches out of each belt. The belt from the line shaft in the basement was then put on the drive pulley and set it in motion, turning the shaft and friction-clutch pulley at the rate of about two hundred and thirty revolutions per minute. The loose pulley was standing still between the drive pulley and the friction-clutch pulley, which were rapidly revolving. Appellee then attempted to put the belt from the line shaft above on the loose pulley. While making that attempt he was in some way caught by the friction-clutch pulley and drawn down. His arm, shoulder blade and collar bone were broken, so as to require amputation of his arm, and he was otherwise injured. He brought this suit against appellant to recover damages for his injuries, and obtained a verdict for $10,000, on which judgment was entered.

The charges contained in the declaration, upon which it was sought to fix a liability upon the defendant, were that the defendant had failed to have the elbow joints and knuckles of the friction-clutch pulley safely protected and guarded with flanges, shields and other guards, and to have the bolts and nuts properly trimmed off, guarded and protected, and that Tucker negligently and recklessly directed and commanded the plaintiff to belt the pulley while the counter shaft and friction-clutch pully were making two hundred and thirty revolutions per minute, without shutting down the gates, and stopping the mill.

Plaintiff's statement of the circumstances attending the injury, was substantially as follows: After he had cut the belt connecting the line shaft with the loose pulley, and shortened it as before stated, he tried two or three times to throw it on the loose pulley with his hands, but it was too tight to be put on in that way. He then told Tucker that he could not put the belt on in that way, and that they

had better shut down. Tucker said that he would get a rope, and that he did not think it necessary to shut down. A rope was procured, and Tucker went on the other side and held up the slack of the belt, which was a heavy ten-inch, six-ply belt, of gutta percha, while plaintiff attempted to put it on by means of the rope. The method in use in putting on the belt with the rope, would be to fasten the belt to the pulley with the rope, and then throw the friction-clutch pully into gear, and start the pulley being belted, and run the belt on in that way. There was a space of about two and a half inches between the rim of the loose pulley which he was trying to belt, and the rim of the friction-clutch pully which was revolving, and while he was holding the belt and trying to pass the rope through this space, he was caught in some way by the friction-clutch pulley. He had no thought of danger on account of the friction-clutch pulley being in motion, and his suggestion to shut down the mill was not made on that account.

It is clear that so far as there was any danger to plaintiff, either on account of the manner in which the shaft and pulleys were put up, or on account of the absence of guards or other protection, or from not having the ends of bolts or nuts trimmed off, or because the friction-clutch pulley was in rapid motion, such danger from any or all these sources was open and visible, and as well known to plaintiff as to Tucker or the defendant. The plaintiff put in the shaft, and put the pulleys on it, and was familiar with all their features. He had put on belts, and was acquainted with the methods of putting them on with or without a rope. When the rope was procured he immediately set to work to put the belt on with its aid, from his own knowledge of the method to be used. The dangers being known and obvious, if he voluntarily incurred them, he could not recover from the defendant for injuries suffered in consequence, which would amount to compensating him for his own negligence. Camp Point Mfg. Co. v. Ballou, 71 Ill. 417; St. Louis & S. E. Ry. Co. v. Britz, 72 Ill. 256; C. & A. R. R. Co. v. Munroe, 85 Ill. 25; Penn. Co. v. Lynch, 90 Ill. 333; Stafford v. C., B. & Q. R. R. Co., 114 Ill. 244.

If there is any right of recovery it must rest upon proof of the averments of the declaration that the superintendent, Tucker, wrongfully directed and commanded plaintiff to belt the pulley while the friction-clutch pulley was in rapid motion, without shutting down the mill, and the plaintiff was not guilty of negligence in obeying the command. Tucker denied that plaintiff said anything about shutting the mill down, or that it was thought of, so far as he knew. But, assuming that plaintiff's version of the occurrence is correct, as the jury might be justified in concluding, what was said by Tucker was not in the nature of an order or command; the question of danger was not even present in the mind of the plaintiff, and was not presented in any way to Tucker by the remark made by plaintiff, who spoke of shutting down as a mere matter of convenience. Tucker suggested the use of a rope on the same ground, and said that he did not think it necessary to shut down. Plaintiff adopted the suggestion without hesitation or objection. He did not consider the risk he was taking as not being within his employment, or make any objection on that account, and his duty to take it was not passed upon in any way, by Tucker. Plaintiff knew just as much about the risk as Tucker did, and it can not be said that Tucker thought of it or should have done so, while plaintiff, with equal means of knowledge, did not think of it, and would not be reasonably expected to do so. There was nothing in the suggestion to deprive plaintiff of the free exercise of his judgment, or to cause him to encounter a risk which he was otherwise unwilling to assume. We see nothing in what was said to take the case out of the rule.

The second and third instructions given at the instance of plaintiff, declared a liability of defendant if the machine was of doubtful safety, either in construction or intended use, and the superintendent induced the plaintiff to use it. To require that machinery shall be free from doubt in respect to safety in use is equivalent to requiring that it shall be perfectly safe. It is a matter of common knowledge, that machinery generally is not absolutely safe in use, and there is no requirement that an employer shall

furnish such machinery. If defendant had been guilty of no wrong in respect to the machinery furnished, it could be guilty of no wrong in requiring plaintiff to use it. The instructions were also misleading, as the jury might understand that plaintiff was induced to do what he did by the mere suggestion of the superintendent. They might be readily applied to his remark, which plainly would not render the defendant liable.

It is objected that offers of proof were made of matters so clearly irrelevant to the issue that they could only have been made for the purpose of having the statements heard by the jury, with the object of prejudicing the defendant, and without any belief that the offered evidence would be competent. The court sustained objections to offers of proof, and finally required further offers to be made out of the hearing of the jury. While there was much persistence in offering proof so clearly irrelevant that it would be difficult to believe that it was regarded as competent, or made with a view to saving a doubtful question, there was no error of the court in its rulings, concerning the offers, and we think that the jury were made to understand that they were not to be considered.

Other objections are made; but, in the view that we take of the case, it will not be necessary to consider them. In our judgment the evidence does not sustain the verdict. The judgment will be reversed, and the cause remanded.