## Michael Tobin v. Friedman Manufacturing Company.

1. PRACTICE—*When a Case Should be Taken from the Jury.*—It is proper for the court to take the case from the jury, whenever the evidence produced, with all inferences that can be justifiably drawn from it, is insufficient to support a verdict, should one be found.

2. NEGLIGENCE—*Failure to Foresee Natural Results.*—In a suit against a master based on his alleged negligence, the servant is chargeable with notice of all natural results, with which every mature and reasonable person is supposed to be acquainted.

3. MASTER AND SERVANT—*Care Required of Master.*—A master is not required to interpose and forbid the use of an apparatus which his servants have adopted for their own convenience, when it is clear that nothing but careless misuse of it can result in injury.

4. SAME—*Liability of the Master.*— The mere relation of master and servant can never imply an obligation on the part of the master to take more care of a servant than he may reasonably be expected to take of himself; and if defects in machinery or other appliances are as well known to the servant as to the master, the servant must be regarded as voluntarily incurring the risk resulting from its use, unless the master urges or coerces the servant into danger or in some other way directly contributes to the injury.

Trespass on the Case, for personal injuries. Error to the Superior Court of Cook County; the Hon. HENRY V. FREEMAN, Judge, presiding. Heard in this court at the October term, 1896. Affirmed, Opinion filed November 19, 1896.

ROSENTHAL, KURZ & HIRSCHL, attorneys for plaintiff in error.

PECKHAM & BROWN, attorneys for defendant in error.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The trial court, at the conclusion of plaintiff's case, instructed the jury to return a verdict for the defendant, and judgment was entered upon such verdict.

The only question before us, therefore, is, was there sufficient evidence, with all inferences that the jury could justifiably draw from it, to support a verdict if one had been

returned for the plaintiff.    Simmons v. Chicago and Tomah R. R. Co., 110 Ill. 340; Frazer v. Howe, 106 Ill. 573.

The personal injury for which plaintiff sought a recovery was sustained while he was a servant for the defendant in the capacity of loading ice into a refrigerator car.

The declaration consisted of three counts.    The first count charged the employer with failing to use ordinary care in supplying appliances of reasonable strength and firmness for the purpose of lifting the ice into the cars.

The second count charged failure to give proper supervision over said work, in order that the same might be conducted in a manner reasonably safe in its execution.

The third count charged that plaintiff was inexperienced and ignorant of the dangers, and defendant was negligent in not giving plaintiff reasonable information, warning and instruction.

The evidence showed that the plaintiff had been in the service of defendant, as a laborer, for five or six days, and that up to the day before the accident, he had worked at rolling and lifting tierces of lard and " hustling around as they wanted."

On the day before he was hurt he was ordered by the foreman to assist men who were engaged in " icing " some refrigerator cars, and he worked in that capacity during that day, and on the following day, until ten o'clock in the morning, when the injury happened.

The cars were loaded by storing the ice into the ice boxes of the cars through holes in their roofs, constructed something like the scuttle or hatchway to a flat roofed house, and the customary way of getting the ice up to the car roofs had been, prior to two or three days before the plaintiff was put at that work, by men throwing the ice, with tongs, from a lower platform, to other men ' who stood upon the car roofs.    Cakes of ice weighing not above fifty pounds each were thus put into the cars, and axes and other tools were furnished for cutting the ice, which usually was in cakes weighing about 150 pounds, into cakes that could be thus handled.

Tobin v. Friedman Mfg. Co.

About two or three days before appellant was put at the work of "icing," the men engaged at that job took an apparatus called a beam scale, which was in construction something like a very large " saw horse," and was used for hanging scales to, while tierces were being weighed, and placed it on top of two cars that stood side by side, in such a way that two of its legs rested upon the roof of one car, and its other two legs upon the roof of the other car. Then, by the aid of a rope thrown over the beam, they hoisted ice from the ground to the tops of the cars. This process of lifting up the ice was in use by the men when appellant went to work with them, and was pursued successfully all of that day, as it had been for two previous days. On the morning of the second day of his work there, and while he, together with two other men, was pulling at the rope hoisting a cake of ice, the beam or horse tipped over, and in some way the appellant was struck and injured in its fall.

It was shown that at the end of each day's work the horse was taken down and was set up again on the next morning, and, of course, it needed to be moved whenever the job of filling the cars on which it stood was completed.

The beam or top of the horse was about five feet long, and although we fail to discover that its height was given by any witness, it is fairly inferable from its other dimensions and the use for which it was designed, that it must not have been far from five feet high. Its legs slanted in both directions, so that from the foot of one leg to the foot of the other leg on the same end of the beam, was about two feet, and from the foot of the legs on one end to the foot of the other legs on the other end of the beam, was about seven feet, and the whole, used as a scale beam for weighing purposes, was calculated to sustain a weight of 1,000 pounds.

It was shown that the foreman knew of the use the horse was being put to, and made no objection. It was also shown that when the opening through the roof of one car was of the right distance from that of the alongside car, the legs of the horse would, to some extent, be held in place by the

frame or curbing that surrounded the holes and extended two or three inches above the level of the roof, but that such a coincidence of distance would not always happen is apparent. No other method of holding the horse in place was adopted by the men, and the only thing that influenced the horse to stand upright, aside from its method of construction, was that of its own weight and the weight of whatever was suspended from it. It is no more than to apply the law of natural forces, to say that whatever operated to draw laterally upon the top of the horse would tend to overturn it, and that whatever operated to draw perpendicularly upon it would tend to keep it upright.

Appellant urges that because the foreman knew of the use to which the workmen were putting the horse, it was an adoption by the appellee of that method of loading, and the appliance being insufficient and insecure, and appellant not being warned of its insufficiency and danger, the appellee was liable.

There does not appear to have been anything insecure in the horse itself. It was built to sustain a much greater weight than that of the ice hoisted at any one time, and it is plain that it was an entirely safe apparatus so far as holding the loads put upon it was concerned. It was only unsafe when improperly used. Although the foreman knew of the use being made of it, there is no evidence that he ever saw it used except in a proper way—by the men who pulled the rope standing near enough to a perpendicular line drawn from the horse to the ground so as not to draw laterally upon it with much force, and thus tend to overturn it. The apparatus had been used in perfect safety for at least three days, and such fact tends strongly to show that on the occasion of the injury the men who pulled the rope must have drawn upon it in a manner which every man of reasonable judgment knows would tend to overturn it.

The appellant was one of the men so engaged, and was clearly a fellow-servant with the others engaged with him in pulling the rope, and with the men on top of the car who received the ice from the hoisting apparatus. Unless, there-

fore, the accident occurred for some cause for which none of those so engaged were responsible, there could be no recovery.

Concerning the use of the apparatus, appellant's reply brief says: " When in the first instance it was brought out, it was so done by the men; yet in the evenings it was put into the building, and in the morning brought out again in the sight and presence of the foreman," * * * who " allowed this apparatus to be put upon the tops of the cars, and there used without any fastening." It must, in the very nature of the use to which it was put, have been moved not alone at morning and evening, but also whenever a car was loaded and another put in place for loading. The appellant, therefore, must have seen and known, as well as any other member of the " icing " gang, how the apparatus was put and sustained in place. It was not necessary that he should have belonged to the force that worked on the top of the cars to have understood that much. He could know, and must have known, as well as they, that it was not unfastened from anything when it was taken down, nor fastened to anything when it was put up, and it would be quite too great a stretch of any rule to require that the foreman should have interposed and forbidden the use of an apparatus which the men had adopted for their own convenience, when it was clear that nothing but careless misuse of it could possibly result in injury. Appellant must be chargeable with notice of all natural results with which all mature and reasonable persons are supposed to be acquainted.

Appellant had, in the few days of his work for appellee, before he was put at work loading ice, seen the men engaged at that work throw the ice up in the manner in vogue before the horse was used, and he had assisted in the work of hoisting by means of the horse during one day before he was injured, and, as we have already seen, he must have known that the horse was not fastened, or held in place, in any way except by the weight of itself and its load.

It is not claimed that appellant ever said anything to the foreman, or to anybody else to whom he might complain,

that there was anything dangerous in the horse itself or in the manner of its use, and it is evident that the only danger that could ensue was in the manner of using it, for which appellant and his fellow-servants were alone responsible. In that respect he voluntarily assumed the risk and was rightfully denied a recovery.

" The mere relation of master and servant can never imply an obligation on the part of the master to take more care of a servant than he may reasonably be expected to take of himself. And so it is held that where the defects in the machinery or other appliances are as well known to the servant as to the master, the servant must be regarded as voluntarily incurring the risk resulting from its use, unless the master, by urging on the servant or coercing him into danger, or in some other way, directly contributes to the injury." Pennsylvania Co. v. Lynch, 90 Ill. 333.

Had the cause been submitted to the jury and a verdict found for the appellant, it would have been the duty of the trial court to have set the verdict aside, and for that reason it was a case falling within the rule laid down in the cases cited, *supra*, to that point.

The judgment of the Superior Court is therefore affirmed.