## Winkle Terra Cotta Co., John McEwen, Jr., and Paul McEwen v. Antonia Homersky, Adm'x.

1. MASTER AND SERVANT—*When the Master is Not Responsible.*— Where a servant is doing his work in a way not contemplated by his employer and not in accordance with his contract of employment, whatever the hazards of the work may be, they are assumed by the servant of his own free will, and his employer can not be held responsible to him for the consequences.

Trespass on the Case.—Death from negligent act.   Trial in the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Verdict and judgment for plaintiff.   Appeal by defendant.   Heard in the Branch Appellate Court of the First District at the October term, 1897.   Reversed.   Opinion filed May 31, 1898.

## STATEMENT.

This is a suit brought by the appellee as administratrix of her husband, August Homersky, who is alleged to have been killed while in the employ of the Winkle Terra Cotta Company through the negligence of the defendants.   Appellants John and Paul McEwen were contractors engaged in the erection of a four-story building.   They contracted in writing with the terra cotta company as sub-contractor to furnish and put in place the terra cotta for the building, including a cornice.   This cornice extended along the top of the building and was about sixty feet from the ground. The contract for setting the cornice provided that the "scaffolding, mortar, iron anchors and hoisting of material" were to be furnished by the McEwens.   These anchors are said to have been furnished, but as the terra cotta was a little thicker than the plans required, did not fit and were not used.   Upon the morning of the accident, the four men employed by the terra cotta company to set the cornice, including the deceased, were at the building at eight o'clock ready to work.   As the anchors were not there, or, if there, were not suitable for the use intended, for the reason stated the men waited and did not go on with the work.   About ten o'clock the general superintendent, Reed, employed by the original contractors, came around and complained vigorously because the work was not going on.   The foreman of the terra cotta company explained that he was waiting for anchors, and did not want to put up the remainder of the cornice without them.   But Reed, it is claimed, insisted, and finally the men concluded to go on without the anchors and did so until about 3:30 P. M., when a heavy section of the cornice was pulled or fell upon the scaffold, throwing the deceased to the ground, causing his death.   A verdict was obtained and judgment rendered against the defendants,

who prosecute separate appeals, which, by stipulation, have been consolidated.

EDWARD S. CURTIS and WM. M. JOHNSON, attorneys for appellant, the Winkle Terra Cotta Company.

The master has the right to assume the servant has knowledge of the character and location of structures which he is familiar with and had an opportunity to ascertain. Negligence arises out of failure of duty. No warning is required where a defect is known and danger therefore appreciated. It is not failure of duty on the part of the master to expose a servant to risks and dangers which the servant fully comprehends and appreciates and which he is willing to assume. Bailey, Master's Liability to Servants, Chap. II, p. 198.

The servant is presumed to know the nature of the employment upon which he is entering and the ordinary risks which he will run. He is not bound to continue in an employment in which he runs serious risks, and if he does he must take things as he finds them. Whittaker's Smith on Negligence, p. 133.

The servant is bound to see patent and obvious defects in machinery or other instrumentalities of the business, and when he goes into the service of a person, knowing that the instrumentalities employed are unsafe and dangerous, he takes the risk of their use upon himself, and can not hold the master responsible for injuries resulting therefrom. It may be inhuman to expose workmen to peril and risk of their lives, but it does not create a right of action for an injury when the workman knows all the facts. Wood's Master and Servant, Sec. 355.

It has come to be well settled that the master may conduct his business in his own way, although another method might be less hazardous, and the servant takes the risk of the more hazardous method as well, if he knows the dangers attending the business in the manner in which it is carried on. Bailey, Chap. 9, p. 145.

The servant, knowing the hazards of his employment, can

not maintain an action against the employer because he may be able to show there was a safer way in which the business might have been carried on, and that had it been conducted in that way he would not have been injured. Gilbert v. Guild, 144 Mass. 601; Sullivan v. India Mfg. Co., 113 Mass. 398; Simmons v. Chicago & Tomah R. R. Co., 110 Ill. 347.

If a servant voluntarily puts himself in place of danger the master is not liable. Felch v. Allen, 98 Mass. 572; Sprong v. B. & A. R. R. Co., 60 Barb. (N. Y.) 30; Corbin v. American Mills, 27 Conn. 274.

If a workman is engaged in service of peril, if the danger belongs to the work itself or to the service in which he engages, he will be held to all the risks which belong to either. Perry v. Marsh, 25 Ala. 659; Baxter v. Roberts, 44 Cal. 187; Indemaur v. Davies, L. R. 2 C. P. 313; Gibson v. Pac. R. R. Co., 46 Mo. 163; 2 Am. Rep. 497; Cumberland R. R. Co. v. State, 44 Md. 283; Leonard v. Collins, 70 N. Y. 90; DeGraff v. N. Y. C. & H. R. R. Co., 76 N. Y. 125; Evans v. L. S. & M. S. Ry. Co., 12 Hun, 289.

Schuyler & Kremer, attorneys for the appellant McEwen; D. J. Schuyler, of counsel.

S. P. Douthart and J. J. Kelly, attorneys for appellee.

Where the injury is the result of the negligence of the defendant and that of a third person, or of the defendant and an inevitable accident, or an inanimate thing has contributed with the negligence of the defendant to cause the injury, the plaintiff may recover, if the negligence of the defendant was an efficient cause of the injury. 2 Thompson on Negligence, 1085, Sec. 3; Bishop on Non-Contract Law, Secs. 39, 450, 452; Shearman & Redfield on Negligence, Sec. 31 *et seq.;* Carterville v. Cook, 129 Ill. 152.

Mr. Justice Freeman, after making the foregoing statement, delivered the opinion of the court.

The negligence charged in the declaration, for which it is sought to hold appellants responsible, consists in the alleged

failure of the McEwens to supply, and of the terra cotta company to use, anchors which, it is claimed, were intended to and would have held the cornice in place and prevented the accident.

In the view we are compelled to take of the case it will not be necessary to discuss at length the question whether the appellants or either of them were guilty of such negligence in these respects as would entitle appellee to the judgment in her favor. It is, we think, sufficiently clear, and it seems to be conceded by appellants' counsel, that there was danger that the cornice would not remain in place when completed unless the anchors were put in as the contract provided. There was, therefore, great risk in proceeding with the work, adding piece after piece to the weight of the cornice, and taking the chances of its fall. It is said that only about twenty-five feet of it actually fell, and more than seventy-five feet of it remained in place, notwithstanding all of it alike was destitute of anchors. Nevertheless, the fact that any of it fell, as it evidently did, may be conceded to indicate the impropriety of proceeding with the work as was done, without the protection which the anchors were intended to afford.

The testimony tends strongly to show that the immediate cause of the accident was that the deceased, perhaps in consequence of bending down after mortar, made a misstep or slipped; that to save himself, he caught at the cornice, which gave way under his hand, and fell over upon him, knocking him from the scaffold, and breaking the latter with its weight. This is in accordance with the testimony of those whose position at the time enabled them to have the best opportunity of knowing the facts, and who seem most worthy of credence as to that matter. There is also evidence given by the foreman who was called as a witness by appellee, that deceased was told not to use his hammer so much on the cornice just before the accident, and replied, " Oh, it can't be knocked down that way."

It is contended in behalf of appellants' counsel that whatever negligence there was, if any, on the part of appellants,

or either of them, in not furnishing or using the anchors, the actual and proximate cause of the accident was the use of his hammer by the deceased and the slip or. misstep which caused him to seize the cornice, thus pulling it down upon him.

However that may be, the controlling question here is, whether the deceased voluntarily assumed the danger and entered upon the work of his own accord.

There are certain facts which seem to be undisputed, and are included in the statement made by appellee's counsel in their brief. It is conceded that the Winkle Terra Cotta Company was a sub-contractor engaged in setting the cornice at the time of the accident, and that deceased was in its employ. He had been working for said company putting up the terra cotta work on this building for about two weeks. The morning in question, the workmen employed by the terra cotta company were on hand at eight o'clock ready to put up the cornice. They remained idle, waiting for the anchors until about ten o'clock. At that time Reed, the general superintendent of the building, representing, not the terra cotta company, but the original contractors, John and Paul McEwen, came around and found the men employed by the terra cotta company doing nothing. He was told by the foreman of the latter, in the presence of the deceased and his fellow-employes, that as he, the foreman, had " no anchors up there," he would not " start in." Reed insisted that the terra cotta company's men should go to work, and said that he would be responsible for the job; that if they did not go on he would get some one else. Finally the foreman said to his men, including the deceased, that they had heard what Reed said, and if they wanted to go to work they could do so. The men were anxious to go on because, as the foreman testifies, " the superintendent was raising hell with them." At length the men concluded among themselves that " the cornice would stand without anchors." One of the men testifies that he said, " On my part I will go to work if Mr. Reed is responsible for the work." Accordingly they all went to work putting up the

cornice without the anchors, and continued at it from ten o'clock in the forenoon until the accident, which occurred about 3:30 P. M.

From this state of facts it is apparent that the men were doubtful of the propriety of going on without the anchors, but concluded that if Reed, representing the contractors for the building, was willing to take the responsibility of its falling and spoiling the job, they, as employes of the terra cotta company, would take the risk of putting up the cornice. They were not ordered by the foreman of the terra cotta company, to whom alone they were responsible, to go on with the work. They were given their free choice about the matter, and settled it among themselves. They took the responsibility of doing the work in a manner not contemplated by their employer and without said employer's knowledge or consent. For there is no evidence that the foreman, Freygang, had any authority except to do the work in accordance with the plans and specifications which provided for the use of anchors. His refusal to do the work without anchors in the first place, and his leaving the matter to the men to determine, tend to show that he did not regard himself as having such authority.

If their going on with the work without anchors under these circumstances was negligence the negligence was clearly and wholly their own. It is not a question as to whether by the contract of employment they assumed any other risks and perils than those which are obvious to a person of ordinary understanding, with opportunity for observation.

It is not necessary to consider whether the deceased and his fellow-workmen assumed a risk not apparent to ordinary observation at the time. They knew they were doing the work in a way not contemplated by their employer, and not embraced in their contract of employment. See Felch v. Allen, 98 Mass. 572. Whatever, therefore, the hazards may have been, they were assumed by the workmen of their own free will, and their employer can not be held responsible to them for the consequences. See Camp

Point' Mfg. Co. v. Ballou, 71 Ill. 419; Abend v. T. H. & I. R. R. Co., 111 Ill. 209; Penn. Co. v. Lynch, 90 Ill. 333.

Doubtless the conduct of Reed, the general superintendent for the McEwens, may have been reprehensible when he insisted that the work go on without waiting for the anchors. His conduct may have been inexcusably reckless. But he had no control over the men employed by the terra cotta company, and the relations of that company to his principals were regulated by an independent written contract. Probably he ought not to have urged that the work go on without anchors. He may, if he agreed to assume the responsibility in case the cornice should fall, have undertaken to make his principals liable to the terra cotta company for the damage it sustained. But his principals are not liable to the men for the consequences of the voluntary act of the latter, nor for the negligence, if any, of the independent contractor. Jefferson v. The Jameson and Morse Co., 165 Ill. 138.

There is no evidence here that the deceased and his fellow employes were ignorant of the risk they assumed, or that they were lacking in ordinary intelligence. The consequences of the accident are deplorable, especially to this appellee and her children, thus deprived of a husband and father. But unless the employer is to be held an insurer of his employes against their own acts, no recovery can ever be had in this case. For this reason it is our duty to put an end to litigation, which can never benefit the appellee. The judgment of the Circuit Court will therefore be reversed without remanding.