## Daniel Simpson v. Weir & Craig Manufacturing Company.

### Gen. No. 11,325.

1. ASSUMED RISK—*what within doctrine of.* Where the defects or dangers in machinery and appliances are as well known to the servant as to the master, he must be regarded as voluntarily incurring the risk resulting from their use. If, however, the employee complains to the master and receives a promise that repairs or improvements to obviate dangers will be made, he may continue in the employment a reasonable time to permit the promise to be performed and may recover for any injury resulting, unless the danger of the service is obviously so great and imminent that it cannot be prudently undertaken.

2. PROMISE TO REPAIR—*what cannot be considered as.* A conversation which consisted of the plaintiff saying to the foreman of his master, "Somebody will get caught there yet," and of the reply by such foreman as follows: "It takes lots of red tape to do a thing around this corner or around this place, rather," cannot be construed as a promise to make repairs upon which the employee may rely and continue in the performance of his perilous duties.

Action on the case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Affirmed. Opinion filed October 4, 1904.

**Statement by the Court.** This is an action to recover for personal injuries. At the close of the plaintiff's evi-

dence the court directed a verdict for appellee and entered judgment.

Appellant at the time of the injury had been for a period of about six months in the employ of appellee doing general work about a factory.   The accident occurred upon an out-door freight elevator attached to the outside wall on the south end of one of the factory buildings.   It was operated in an open framework.   There were three uprights on each of the east and west sides of the elevator shaft.   The guide rail was attached to the central of these uprights on either side.   The north side of the shaft opened against the brick wall of the building, in which were double doors at each of the three stories or floors. Horizontal timbers or braces ran at intervals of about six feet apart around the other three sides of the shaft between the uprights, holding them firmly in position.   The shaft was not otherwise enclosed.

The car consisted merely of a platform with side guides and a cross bar overhead.   To the guides on either side were attached four iron rods or braces bolted to the platform about six inches from its edges and extending at an angle of about forty-five degrees to the guide beams. There was no " cage," and except as the sides were protected by the iron rods referred to, the platform was opened and unenclosed.   There was, however, on the west side of the platform an iron plate from five to eight inches high.   The east edge of the platform as the car ascended and descended came within about one and one-half or two inches from the horizontal beams forming a part of the shaft enclosure. Anything protruding more than that distance beyond the east edge of the platform would be caught between it and the horizontal beam as the platform ascended.   The elevator moved slowly with some vibration.

Appellant had been in the habit of using the elevator for several months and was familiar with its construction and operation.   At the time of the accident, he was assisting a fellow employee to take a platform truck loaded with iron engine weights to one of the upper floors by means of the

elevator. The truck had an iron handle or tongue about three feet long, which when not in use could be turned up and leaned back upon the truck. The two men placed the truck on the elevator platform, the handle toward the wall, but turned up and resting back against the truck. The latter covered about four by five feet of the elevator platform. The platform itself was about six by six feet. The elevator was started upward by appellant's fellow-workman, and appellant stepped back to see whether the truck would clear the first cross beam of the south end. Finding it all right he stepped forward and as he did so the vibration of the ascending elevator caused the iron handle on the truck to fall forward against the wall of the building about six inches away. Appellant reached forward, taking hold of the handle with his left hand and pulled it away from the wall. In so doing he came into close contact with the wall, as he says " too close to be comfortable," and he undertook to change hands. In so doing he stepped back with his left foot in such a way that his heel projected beyond the east edge of the elevator platform far enough to be caught between it and the lower edge of one of the cross beams constituting a part of the framework of the elevator shaft, inflicting the injuries complained of.

WING & WING, for appellant.

F. J. CANTY and R. W. IRWIN, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is urged first that the plaintiff's evidence tended to prove negligence on the part of appellee, and that the court erred, therefore, in withdrawing it from the jury and directing a verdict against appellant. The contention is that appellee failed to perform its duty in not providing guards on the east side of the elevator platform or floor to the same extent at least as on the west side, where there was an iron plate from five to eight inches high. The floor of the elevator, however, was large and roomy, six feet on each side, containing thirty-six square feet of space.

Simpson v. Weir & Craig Manufacturing Co.

In ordinary use so far as appears this would give ample room to keep away from its edges. It was not necessarily dangerous because the sides were unprotected. Its safety or danger obviously depended upon how it was used. If the floor was so filled up with freight as to leave no standing room except at the edges, its use would require more care than when the freight covered only a small space on the floor.

However that may be, appellant assumed by his contract of employment all the ordinary hazards arising from the performance of his duties, including the use of the elevator as it was constructed. With its dangers he was perfectly familiar. They were open and obvious. He was at liberty to quit the service if he did not wish to assume the risks. He cannot recover for injuries he voluntarily encounters. Where the defects or dangers in machinery and appliances are as well known to the servant as to the master he must be regarded as voluntarily incurring the risk resulting from their use. Penn. R. R. Co. v. Lynch, 90 Ill. 333; Stafford v. C., B. & Q. Ry., 114 Ill. 244. If, however, the employee complains to the master and receives a promise that repairs or improvements to obviate dangers will be made, he may continue in the employment a reasonable time to permit the promise to be performed and may recover for any injury resulting, unless the danger of the service is obviously so great and imminent that it cannot be prudently undertaken. Missouri Furnace Co. v. Abend, 107 Ill. 44–50. It is claimed by appellant's counsel that such a promise was made in this case.

The plaintiff testified that about a month before the accident he said to the foreman, " somebody will get caught there yet," and that the foreman said he had spoken about it, but " it takes lots of red tape to do a thing around this corner or around this place, rather." It is argued that this conversation tended to prove a promise to repair, or change by putting a guard or guards on the side or sides of the elevator platform; and that it became under this evidence a question of fact for the jury whether appellant assumed

the risk in continuing to use the elevator. It is apparent, however, that nothing in the conversation quoted can be construed as tending to prove a promise that the employer would do anything. The more reasonable meaning of the foreman's language is that nothing was likely to be done. There was obviously nothing in that conversation which raised a question of fact for the jury.

It is clear that the injury in this case resulted from a want of care on the part of the deceased. The accident was one which might occur even on a passenger elevator in almost any business or office building, where there is ordinarily an opening or doorway without any gate on the elevator cage, if a passenger or employee should be careless enough to project his foot beyond the edge of the elevator floor. In the case at bar the accident was the result of conditions of appellant's own creation. He helped to put the truck on the elevator floor. He seems to have taken charge of the truck while his companion started the elevator. It moved slowly. When the truck handle fell forward, no reason appears why the car might not have at once been stopped had appellant given the word. There was sufficient standing room upon the car outside of the truck. The facts in the case are similar to those in Beidler v. Branshaw, 200 Ill. 425, where it was held (p. 431) that the negligence of the injured person was such as to prevent recovery, and that the trial court should have so instructed the jury, as was done in the case at bar.

The evidence is not such as to entitle appellant to recover. If a verdict had been returned in his favor it would have had to be set aside. Finding no error in the ruling complained of, the judgment of the Circuit Court must be affirmed.

*Affirmed.*