MARY ANN SIMMONS, Admx.

*v.*

THE CHICAGO. AND TOMAH RAILROAD COMPANY.

*Filed at Ottawa May 19, 1884.*

1. PRACTICE—*excluding all the plaintiff's evidence—directing a verdict for the defendant.* Although there may be some evidence tending to support the plaintiff's case, yet where the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is so far insufficient to support a verdict for the plaintiff that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant.

2. NEGLIGENCE—*as between master and servant—want of proper care on the part of the latter.* While there is an implied contract betwéen employer and employe that the former shall provide suitable means, appliances and instrumentalities with which to perform the labors required of the latter,

and also that the latter shall be advised by the former of all dangers incident to the service of which the latter is not cognizant, yet the failure of the employer in this regard furnishes no excuse for the conduct of an employe who voluntarily incurs a known danger.

3. If a servant, knowing the hazards of his employment, as the business is conducted, is injured while engaged therein, he can not maintain an action against the master for the injury merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury.

4. In this case, an employe of a railroad company was killed by the falling of a bank of earth which he was engaged in excavating. His administrator brought suit for damages, against the company, on the alleged ground of a want of proper care on the part of the agents of the company in charge of the work, in directing the manner in which it should be done. The facts, as shown by the testimony, were substantially these: A number of laborers were engaged in excavating a hill, under the direction of a foreman. The bank, at the point where the accident occurred, was sixteen to twenty feet high, and composed of clay commonly called "joint clay." The deceased was twenty-eight years of age, an old miner in the neighborhood, and accustomed to work in that kind of earth. The manner of doing the work, and as directed by the foreman, was undermining the bank by digging under from two to three feet, and prying the bank off from the top. That was not the proper and safe way to take down the bank. The foreman had control of the men, and could discharge them for disobedience of orders. On the morning of the accident, the foreman, as he was about to go elsewhere, cautioned the men about the danger. Two days previously the superintendent of the road told the men that the way they were doing the work was dangerous,—that they must not cave it off that way, and that they must not dig under so far. In the forenoon of the accident several of the men, the deceased himself included, were speaking of the bank getting dangerous. One man left the place on that account, and another went to work somewhere else. This the deceased could have done if he had desired, as he was not required to work at that particular place, but chose it for himself; and continuing to work there, the bank fell upon him and killed him. The court below, on this state of case, excluded all the plaintiff's evidence from the jury, and directed a verdict for the defendant. This was proper. There was no sufficient ground of recovery, the deceased having voluntarily continued in the place of danger with full knowledge of the peril he was in.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Jo Daviess county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. M. Y. JOHNSON, and Mr. JAMES S. BAUME, for the appellant:

There was evidence enough tending to support the plaintiff's case, to require that it should be submitted to the jury. The court below had no right to usurp the functions of the jury, and direct a verdict for the defendant.

The motion to exclude the plaintiff's evidence from the jury was a demurrer to the evidence, and the usual consequences follow. *Fent* v. *Railroad Co.* 59 Ill. 349; *Phillips* v. *Dickerson*, 85 id. 11; *Walters* v. *Ohio and Mississippi R. R. Co.* id. 500.

The facts appearing in this case do not bring it within the rule that the servant assumes all the risks, on entering the service, naturally incident thereto. That rule is to be understood as applicable only to such risks and hazards as are incident to the usual and ordinary mode of conducting the business in which the servant is employed. With that limitation the rule is correctly stated. 2 Am. and Eng. Railroad Cases, 104; *Lalor* v. *Chicago, Burlington and Quincy R. R. Co.* 52 Ill. 401; *St. Louis R. R. Co.* v. *Valirious*, 56 Ind. 511; *Baxter* v. *Roberts*, 44 Cal. 187.


Mr. B. C. COOK, for the appellee:

As to the propriety of excluding all the plaintiff's evidence from the jury, and directing a verdict for the defendant, the more reasonable rule is, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge,—not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed. *Pleasants* v. *Fant*, 22 Wall. 120; *Improvement Co.* v. *Munson*, 14 id. 448; *Parks* v. *Ross*, 11 How. 362; *Bowditch* v. *Boston*, 101 U. S. 318; *Ryder* v. *Wombwell*, Law Rep. 4 Ex. 32; *Giblin* v. *McMullin*, Law Rep.

2 P. C. 335; *Jewell* v. *Pan*, 16 C. B. 616; *Toomey* v. *Railway Co.* 3 C. B. (N. S.) 146.

This doctrine has been affirmed in the strongest manner by this court in the case of *Phillips* v. *Dickerson*, 85 Ill. 11, in which the court quote approvingly the case of *Reed* v. *Derfed*, 8 Allen, 524, as follows : "Where the whole evidence introduced by the plaintiff, if believed by the jury, is so insufficient to support a verdict that the court would not permit one to stand, it is the duty of the court to instruct the jury, as a matter of law, that there is not sufficient evidence to warrant a verdict for the plaintiff." See, also, *Gartside* v. *Outley*, 58 Ill. 217; *Martin* v. *Chambers*, 84 id. 579; *Poleman* v. *Johnson*, id. 270; *Railroad Co.* v. *Goodman*, 62 Pa. 329; *Bachelder* v. *Hengan*, 18 Maine, 32; *Tourtelott* v. *Rosebrook*, 11 Metc. 460; *Losee* v. *Buchanan*, 51 N. Y. 476; *McCully* v. *Clarke*, 40 Pa. 399; *Chicago* v. *Major*, 18 Ill. 349; *Hammock* v. *White* 11 C. B. (N. S.) 588; *Holmes* v. *Mather*, L. R. 10 Ex. 261; *Ellis* v. *Railway Co.* L. R. 9 C. P. 551; *Burdon* v. *Railroad Co.* 4 Har. (Del.) 252.

Upon the principal question, as to the liability of the defendant, the rule is : If a servant, knowing the hazards of his employment, as the business is conducted, is injured while engaged therein, he can not maintain an action against the master merely on the ground that there was a safer mode for conducting the business, the adoption of which would have prevented the injury. *Naylor* v. *Chicago and Northwestern Ry. Co.* 53 Wis. 661; *Ladd* v. *Railroad Co.* 119 Mass. 412; *Clark* v. *Railroad Co.* (Minn.) 2 Am. and Eng. Ry. Cas. 240, and cases cited; *Sullivan* v. *India Manf. Co.* 113 Mass. 396; *Stroblendorf* v. *Rosenthal*, 30 Wis. 674; *Morey* v. *Lower Vein Coal Co.* 55 Iowa, 671; *Way* v. *Illinois Central R. R. Co.* 40 id. 341; *Muldowney* v. *Illinois Central R. R. Co.* 39 id. 615; *Kroy* v. *Chicago, Rock Island and Pacific R. R. Co.* 32 id. 357; *Greenleaf* v. *Illinois Central R. R. Co.* 29 id. 14; *Pennsylvania Co.* v. *Lynch*, 90 Ill. 334; *Priestly* v. *Fow-*

*ler*, 3 M. & W. 1; *Assop* v. *Yates*, 2 H. &. N. 768; *Gibson* v. *Erie Ry. Co.* 63 N. Y. 453; *Lanning* v. *New York Central R. R. Co.* 49 id. 453; *Camp Point Manf. Co.* v. *Ballou, Admr.* 71 Ill. 418, and cases cited; *Clark* v. *Chicago, Burlington and Quincy R. R. Co.* 92 id. 43; *Railroad Co.* v. *Britz,* 72 id. 261, and cases cited; *Michigan Central R. R. Co.* v. *Austin,* 4 Mich. 247.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

This suit was brought to recover damages for the death of Edward C. Simmons, who was a laborer in the employ of the Chicago and Tomah Railroad Company, and was engaged, at the time of being killed, with others, in removing a bluff or hill in the city of Galena, for the purpose of preparing the foundation for a round-house, and for laying a side-track. There had been a former trial, resulting in a verdict and judgment in favor of the plaintiff, which judgment, on appeal to the Appellate Court for the Second District, was reversed. At a second trial before a jury, upon the close of the plaintiff's evidence, the court, on motion of the defendant, withdrew the plaintiff's evidence from the jury, and directed them to find for the defendant. The jury so found, and judgment was entered in favor of the defendant, which, on appeal to the Appellate Court, was affirmed, and plaintiff appealed to this court.

The declaration alleged as ground of action, in the first count, neglect of the alleged duty on the part of defendant to direct and cause the work about which the deceased was employed, to be done in a prudent and safe manner, and so as not to endanger the lives of the employes engaged in the doing of the work, by reason whereof a large mass of earth, forming part of a hill which was being dug down under defendant's direction, became detached, and fell upon and killed the decedent. The second count alleges negligence in the

employment of competent persons to superintend and over-
see the doing of the work.

The evidence showed the following facts: The deceased
was twenty-eight years of age, an old miner in that neigh-
borhood, accustomed to work in that kind of earth.  The rail-
road company was engaged in excavating a hill to build a
round-house.  From thirty to fifty men were engaged in the
work.  They were in two gangs, of which Decker and Briggs
were the respective foremen.  The full length of the bank
was between two hundred and three hundred feet.  The bank
was sixteen or twenty feet high at the west end, where the
accident occurred.  It was nearly perpendicular, and com-
posed of clay, commonly called "joint clay."  The manner
of doing the work was undermining the bank by digging under
from two to three feet, and prying the bank off from the top
by bars.  That was not the proper and safe way to take down
the bank.  It should have been taken down from the top, or
pillars should have been left to support the bank.  Briggs
and Decker were the men put in charge by the superintend-
ent of the railroad, and directing how the work should be
done.  Each foreman had control of his own men, and for
disobedience of orders could discharge them.  When one fore-
man was absent, the other directed both gangs.  Deceased was
in Briggs' gang.  Briggs, on the morning of the accident,
went somewhere else, and left his men with Decker, and say-
ing to them:  "Boys, look out for yourselves to-day.  I am
going to work off here.  Don't get covered up."  The super-
intendent of the road was at the bank two days before the
accident, and he told the men that the way they were doing
the work was dangerous; that somebody would get hurt;
that they must not cave it off that way, and that they must
not dig under that far.  In the forenoon of the accident
several of the men there were speaking of the bank getting
dangerous.  The deceased himself said he believed the bank
was getting dangerous.  One man left the place on account

of it, and another on the same account avoided going there, and went to work somewhere else. The deceased was at work at the west end of the bank, shoveling out dirt from under the bank. The bank ran out to a point at the east end. The deceased was not directed to work at that particular spot where he was working—he chose it himself, and might have worked at any other place on the bank. The bank fell in the forenoon of November 24, 1880, some twenty or twenty-five feet of it, lengthwise, killing the deceased.

There may be decisions to be found which hold that if there is any evidence—even a scintilla—tending to support the plaintiff's case, it must be submitted to the jury. But we think the more reasonable rule, which has now come to be established by the better authority, is, that when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is so insufficient to support a verdict for the plaintiff, that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant. *Pleasants* v. *Fant,* 22 Wall. 120; *Randall* v. *Baltimore and Ohio R. R. Co.* 109 U. S. 478; *Metropolitan Ry. Co.* v. *Jackson,* 3 App. Cas. 193; *Reed* v. *Inhabitants of Deerfield,* 8 Allen, 524; *Skellenger* v. *Chicago and Northwestern Ry. Co.* 61 Iowa, 714; *Martin* v. *Chambers,* 84 Ill. 579; *Phillips* v. *Dickerson,* 85 id. 11. In the recent case of *Frazer* v. *Howe,* 106 Ill. 573, this court recognized the rule to be: "If there is no evidence before the jury on a material issue in favor of a party holding the affirmative of that issue, on which the jury could, in the eye of the law, reasonably find in his favor, the court may exclude the evidence, or direct the jury to find against the party so holding the affirmative."

There was no evidence whatever tending to support the second count of the declaration.

The alleged ground of action in the first count is negligence of the defendant in not having the work done in a safe man-

ner. The evidence shows there was a more proper way of doing the work, and one which would have been safe. But the liability of the defendant does not thence result. In *Pennsylvania Co.* v. *Lynch,* 90 Ill. 334, this court said, that while there is an implied contract between employer and employe that the former shall provide suitable means, appliances and instrumentalities with which to perform the labors required of the latter, and also that the latter shall be advised by the former of all the dangers incident to the service of which the latter is not cognizant, "yet the failure of the employer in this regard furnishes no excuse for the conduct of an employe who voluntarily incurs a known danger. He must himself use due care and caution to avoid injury. If he has full knowledge of all the perils of a particular service, he may decline to engage in it, or require that it shall first be made safe; but if he does thus enter it he assumes the risk, and must bear the consequences." And in *St. Louis and Southeastern Ry. Co.* v. *Britz,* 72 Ill. 261, there was approval of the rule laid down in Wharton on Negligence, sec. 214, that "when an employe, after having the opportunity of becoming acquainted with the risks of his situation, accepts them, he can not complain if he is subsequently injured by such exposure." To the same effect are *Clark* v. *Chicago, Burlington and Quincy R. R. Co.* 92 id. 43, and *Camp Point Manf. Co.* v. *Ballou,* 71 id. 418.

If a servant, knowing the hazards of his employment, as the business is conducted, is injured while engaged therein, he can not maintain an action against the master for the injury merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury. Many cases affirming this principle are cited in the brief of counsel for defendant. It was expressly laid down in *Naylor* v. *Chicago and Northwestern Ry. Co.* 53 Wis. 661,—a parallel case with this in its facts, of an injury from the fall of a bank of earth

under which plaintiff was excavating. In *Morey* v. *Lower Vein Coal Co.* 55 Iowa, 671, (a case of injury to a miner by the falling of the roof of the mine,) it was laid down: "The true rule is, that if the plaintiff knew, or by the exercise of ordinary care might have known, of the unsafe condition of the roof of the mine, and he continued to work in a dangerous place without protest or complaint, and without being induced to believe that a change would be made, he assumed the risk, and can not recover." . In *Hughes* v. *Winona and St. Peter R. R. Co.* 27 Minn. 137, the Supreme Court of Minnesota sanctioned the rule that "if a man engage in a service, and continues in a service, with a full knowledge of the manner in which his employer conducts his business, and without objection, he is deemed in law to have assumed and taken upon himself all the risks naturally incident to conducting business in that way, even although it be unsafe." In the present case the danger was as apparent to the deceased as to any one. The condition of the bank was as open to his observation as to that of the foreman. He had been warned of the danger, and he expressed his own belief of the danger. He might have left the particular place where he was, as did one other of his fellow laborers on account of the danger, or have avoided going to that place, as did another one for that same reason.

Respecting knowledge, the court, in *Naylor* v. *Chicago and Northwestern Ry. Co.*, above cited, in commenting upon the evidence there, remarked, with entire pertinency to the present case: "The plaintiff is, presumably, a man of ordinary intelligence. He was cognizant of the practical effects of the law of gravitation, and knew that when a bank of earth is undermined by removing its foundation, it is liable to fall. Such knowledge is not confined to experts. No one knew better than himself the extent to which the bank had been undermined, or could better judge of the peril," and holding that being fully informed of the peril, the plaintiff had no

cause of action. Fully seeing the danger here, the deceased voluntarily exposed himself to it, and he must be held to have assumed all the risk of working where he did, and plaintiff must bear the consequences.

Under the evidence in this case there was no cause of action, and the court ruled properly. The judgment must be affirmed.

*Judgment affirmed.*

Mr. Justice Walker: I am unable to concur in the reasoning or conclusion in this case. I regard the opinion as in direct conflict with many previous decisions of this court, and virtually deprives parties of trial by jury, and substitutes the court for a jury. I therefore dissent *toto cœlo*.

Mr. Justice Scott, also dissenting.

Mr. Justice Dickey: I think it a question of law whether there is any evidence tending to prove a given allegation, and that it is a question of fact whether a given amount of evidence is reasonably sufficient to sustain such allegation. The former is a question for the court, the latter a question for the jury, subject to revision by the court on a motion for a new trial. I therefore can not concur in the proposition that though there may be some evidence tending to prove every essential allegation of a plaintiff, the court may properly take the case from the jury and direct a finding for defendant, merely because, in the judgment of the court, the evidence in support of some material allegation is not reasonably sufficient *in force* to sustain a verdict for plaintiff.