Peoria, D. & E. Ry. Co. v. Joseph A. Hardwick.

1. APPELLATE COURT.—*To Determine Inferences, etc.*—It is the province of the Appellate Court to examine the evidence on appeals. It must exercise an independent judgment upon it and determine what inference should be drawn from a given state of proof.

2. RAILROAD COMPANIES—*Not Liable for Mere Accidents, etc.*—A railroad company is not liable for mere accidents, such as hazards incident to its service, risks which the law will 'presume its employes assume when they take service in its employ.

Memorandum.—Action for personal injuries. Appeal from the Circuit Court of Coles County; the Hon. FRANCIS M. WRIGHT, Judge, presiding. Heard in this court at the November term, 1893. Reversed and remanded. Opinion filed February 12, 1894.

The opinion states the case.

STEVENS & HORTON and WILEY & NEAL, attorneys for appellant.

CRAIG & CRAIG, attorneys for appellee.

MR. JUSTICE WALL DELIVERED THE OPINION OF THE COURT.
This case was here at a former term. (48 Ill. App. 562.) The evidence for the plaintiff in the present record is much

the same as before, aside from the testimony of the witness Newcomb, who says that a day or two before the plaintiff was hurt he noticed the foot-board quiver on going over the crossing in question and that on examination he found slivers of plank on the bolts which held the foot-board on the hangers or stirrups. He further says he notified Byers, who was the foreman of the yard, that the crossing was out of order; that the joint was too low.

It is argued in behalf of appellee that the joint was too low, or that there was a condition of the tie at the joint which permitted the end of the rail to sink as the engine passed over. If this was true, and if the end of the plank was nearly coincident with the end of the rail at this point it might account for the accident. It appears that the foot-board was hung high enough and it is not shown that it was out of repair, hence we must look for some other cause than the alleged condition of the foot-board.

If the end of the rail was depressed by reason of the settled or rotten condition of the tie, there is no very direct proof of it, and there was no allegation to that effect in the declaration. Therefore this aspect of the case can not be considered in support of the verdict, so that reliance must be had entirely upon the alleged protrusion of the plank above the rail, and if the proof will not support the allegation that the plank did so protrude, that the defendant was negligent in that regard and that the plaintiff's injury was caused thereby, then the verdict can not stand.

It is certain that the constant use of the track at this point had developed no apparent danger aside from what was noticed by Newcomb shortly before the accident. If he gave notice to Byers the latter says he does not remember it, nor was he charged with the duty of repairing the track. And in this connection we may here refer to the testimony of Elliott and Hall, who were city officials, that they discovered the crossing was out of order, and that the latter called the attention of the station agent to the fact. These witnesses do not seem to know surely whether what they saw was on the main track where the accident occurred or

on the switch tracks south of it. At any rate what they saw was so palpable that it would have been perfectly apparent to any one and was a considerable time prior to the accident, and Elliott says that some repairs were made after he noticed it and before the accident, and that he can not say that the plank on the main track was out of order at the time of the accident. Plaintiff, who had been constantly passing over this point, saw nothing out of order, though he had passed repeatedly after Newcomb says he saw the quivering of the foot-board and found slivers on the bolt of the hanger. Cahill, the night yard master, who was standing on the foot-board at the time plaintiff was hurt, says that they had passed over the place two or three dozen times that night and had discovered nothing wrong, and the first he knew he saw the plaintiff fall, and then he gave the signal to stop. The engineer did not suspect there was anything wrong, though he had been constantly passing over the place and had passed over it twenty-five or thirty times that night before the plaintiff was hurt.

The superintendent, train master, yard master, master mechanic and section foreman all swear that they were unaware of any defective condition of the crossing although they had occasion to see it and pass over it almost daily.

The measurement taken by the superintendent a few hours after the plaintiff was hurt shows that the plank was not more than a half inch higher than the railroad. These men all swear that the condition was the same then that it had been for a considerable time. Imputing to all the witnesses a disposition to be truthful, and making allowance for honest differences in their estimate of the height of the plank, we think there is no sufficient ground for saying that the latter alone was the cause of the accident.

Since we are required to examine the evidence, we must exercise an independent judgment upon it, conceding to the verdict of a jury all that well settled rules will permit or require; where the evidence is conflicting, we are often compelled to affirm a judgment when we feel that a different conclusion would have been more satisfactory.

Here is a case, however, where we must determine what inference should be drawn from a given state of proof. Suppose the evidence shows merely that the plank was from one-half inch to three inches above the rail and that the foot-board was hung five and a half inches above the rail; what should the law say as to the liability of the railroad company?

It is not shown that the latter knew of the condition of the plank and the plaintiff says he did not know it.

Conceding the testimony of Newcomb to be true, the defect was not known a sufficient length of time to charge the company with notice. As a matter of fact it had not notice.

After the time spoken of by Newcomb, the night yard master, the engineer and the plaintiff passed over the place repeatedly, as already stated, and did not observe the defect if any there was. The great preponderance of the proof, including the fair inference to be drawn from it, stands opposed to the allegation of negligence, and it is unreasonable to say that if the plaintiff's injury was due to the protrusion of the plank the defendant was negligent in that respect.

It is possible the plank was gradually getting higher, and that the tie was gradually softening and getting lower.

This condition of the one or the other, or perhaps both, escaped the observation of those most likely to be affected by it and most likely to discover it, but it progressed unnoticed until the moment of the plaintiff's injury.

Thus it has the appearance, not of negligence, but of mere accident, and at most was one of the hazards incident to the service, a risk which the law will presume the plaintiff assumed when he took the position.

The verdict was for $15,000, a sum sufficient to produce annually by way of interest more than the plaintiff was earning, leaving the principal intact. It is said that the plaintiff is entitled to compensation for his suffering, and that this is to be considered as an element of damages. Conceding this, still we find the verdict much larger than usual for such injuries. There was no medical proof as to the per-

manency of the symptoms stated, and while the plaintiff has suffered the loss of his hand, yet it does not follow that he will be unable to earn a living in whole or in part. It is matter of common knowledge and observation that persons so situated are active and successful in many avocations where even manual labor is required.

The amount allowed by the jury, when regarded in connection with the unsatisfactory character of the proof, strongly impresses us with the belief that the case has not received the fair and impartial consideration by the jury which the law requires and intends in all cases.

Applying to the facts the legal principles contained in the instructions, we are constrained to say that the finding is not sufficiently supported, and that the appellant should have been granted a new trial. The judgment will therefore be reversed and the cause remanded.