## Valentine Werk v. Illinois Steel Company.

1. NEGLIGENCE AND ORDINARY CARE—*Question of Fact.*—Whether a party was in the exercise of ordinary care, is a question of fact to be determined by the jury; it is only where the facts are such that a reasonable mind can draw from them but one conclusion, that negligence may be inferred as a matter of law. Where reasonable minds differ, negligence is a question of fact.

2. ORDINARY CARE—*Burden of Showing.*—The burden of showing the exercise of ordinary care is upon the party seeking to recover for a personal injury caused by the negligence of another.

3. MEASURE OF PROOF—*Care—Scintilla of Evidence.*—A bare scintilla of evidence is not enough to entitle a party to recover.

4.   PRACTICE—*Withdrawing the Case from the Jury.*—While questions of negligence are ordinarily questions of fact to be passed upon by a jury, yet, when the undisputed evidence is so conclusive that the court would be compelled to set aside a verdict in opposition to it, it may direct a verdict for the defendant.

**Memorandum.**—Action for personal injuries.   Appeal from the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding.   Heard in this court at the March term, 1894, and affirmed. Opinion filed June 4, 1894.

### STATEMENT OF THE CASE.

The suit was brought to recover for two injuries.   One was the burning of the legs of appellant by molten metal about July, 1891.   The other was the injuring of appellant by means of an empty ladle which ran upon and cut his foot on October 5, 1891.

Appellant was a laborer in the employ of appellee in its steel mills at South Chicago.   For more than a year before the first injury he had been engaged in straightening up ladles with the assistance of another man, and he was actually engaged in this work when both injuries happened. The place on which appellant worked was called "hot metal hill."

These ladles were large iron kettles lined with clay, which rested on four wheeled cars and were moved on a railroad track by means of an engine.   They were brought up the hill where appellant worked, full, or partly full, of molten metal.   If they were not full they were filled from a hot metal cupola which stood there.

On the top of the hill there were three parallel tracks, which ran north and south, and were only three or four feet apart.   The east track ran close to the cupola, which was east of it.   The ladles filled with hot metal were always pushed up the hill on the east track, and were pushed with the engine behind them from the south to the north.   If there were too many full ladles to be handled properly on the east track the engine (not the one which brought the ladles there, but one which came from the opposite direc-

tion) put some of them, full, on the middle track, where they stood till taken into the converting mill.

They were taken into this mill one at a time by an engine which came from the mill for them. This was not the engine which brought the full ladles to the locality of the cupola, but one that came from the mill south to the full ladles and took them, one by one, into the mill. They were then emptied and brought back, one by one, and placed on the west track of the three, where they were turned up and then taken away to be filled again. The west track never had anything on it but empty ladles. These ladles were brought, one by one, from the mill, by being pushed south on the west track to the vicinity of the cupola.

When a ladle was taken into the mill it was turned down on its side and the molten metal ran out. It was brought in this condition, turned down on its side and empty, to the west track. It was the duty of appellant and the man working with him to straighten the ladle up so that its top would be level and it could be filled up again. This was accomplished by means of levers in certain machinery at the end of the ladle. The average time required to turn up a ladle was fifteen minutes. It was hard work, requiring much strength.

In doing this work the men engaged in it stood between the rails of the track upon which the ladle ran. They could not stand in any other place and do the work. The ladles were seven or eight feet high and two or three feet higher than the heads of the men working at them.

The engine which brought the full ladles on the east track to the vicinity of the cupola, would go back to a switch and come north on the west track and take away with it the empty ladles standing on the track. No ladles were taken down the hill until after they had been straightened up. This was the only place for leveling ladles up, and they were taken away only to be filled and could not be filled unless leveled up.

There was a great noise where these ladles were straightened up, caused by the blowing of the vessels into which the

molten metal was turned, the engines blowing air into the cupola and the noise consequent upon the carrying on of such a business. The noise was so great that the engine which brought the full ladles to the locality could not be heard. This engine sometimes stayed in the locality pushing half empty ladles under the cupola. There was no regularity about the time when the engine would come for the empty ladles.

Appellant testified: "When I was hoisting ladles the engine came along with the full ladles, and if we didn't watch him, sometimes he came along and took the empty ladles while we were at work." "I didn't know when the engine would come for the empty ladles."

Sometimes it came and took empty ladles when appellant was at work. When appellant was burned, in May or July, 1891, the engine bumped a ladle on the middle track; he testifies that always before, the engine took the ladles easy, but that time it bumped it strong; that if the engine had come up easy he would not have then been hurt, and that if the engine had come up easy in October he would not then have been hurt, but that the engine came up strong in October and bumped on the ladles.

Appellant testified that when he was at work he could not see this engine come to the locality. The ladle on which he was working was two or three feet higher than his head and was between him and the engine.

He was incapacitated from work for two or three weeks by the first injury, and then went back to work for appellee, his legs still being, and ever since remaining, sore.

On the night of October 5, 1891, when appellant went to work, the boss told him to hurry up and work fast. They were running a race. He worked at hoisting ladles till between two and three o'clock in the morning. He says there was no light there but that which came from the blasts blowing in the steel mills. There were from six to ten empty ladles on the west track. The north one of these ladles was turned down and appellant and his partner were in the act of straightening it up.

Appellant stood at the north end of the ladle, between the rails of the track on which it rested; all the other empty ladles were south of the ladle on which he was working. It was between him and them, and hid the other empty ladles from his view. While he was thus situated and engaged, an engine came against the empty cars to the south of the one on which appellant was working and shoved them north so as to strike the ladle on which he was working and drove it against him and severely wounded his foot. No warning of any kind was given of the approach of the engine nor that any of the empty ladles were about to be moved.

When appellant was injured he had his foot on the railroad track, and an engine came along and pushed the wheel of the car on which the ladle at which appellant was working stood, upon the foot of appellant; the wheel caught his foot. Appellant and one Polarck were turning up the same ladle when appellant was hurt, and each was working at the north end of the north ladle between the tracks.

Polarck, a witness for plaintiff, testifies:

"Mr. Brandt.   Q.   What happened there?

A.   When we were working on turning up the ladle he held his foot on the rail, and just when the cars were pushed the wheel caught his foot.   Plaintiff was crying, and when he got loose he hopped on one foot over to the scales.

Q.   How long did he lie down there before he got up?

A.   He didn't lay on the track at all.

Q.   When the car struck him what happened to him?

A.   He went on the scales.   There is a bench there and he sat down on the bench and sat there.

Q.   How far did the ladles move when they were struck?

A.   About half an inch or an inch."

Upon the close of the appellant's evidence in chief, the court, on motion of the counsel for the defendant, held that appellant's evidence did not entitle him to have the jury pass upon his right to recover for the injuries he suffered by the accident which occurred in October, A. D. 1891, and that he would instruct the jury to find for appellee as to all matters growing out of said accident.   At the same time

the court held that the July accident might be passed upon by the jury.

There was a verdict and judgment for the plaintiff for §256, from which he prosecutes this appeal.

Brandt & Hoffmann, attorneys for appellant.

Appellees' Brief, Williams, Holt & Wheeler and E. Parmalee Prentice, Attorneys.

Appellees contend that, from the earliest reported case in our State, where the question was passed upon, to the present time, a period of more than thirty years, the general rule has been declared and recognized in opinions announced from time to time, that in order to recover for injuries from negligence it must be alleged and proved that the party injured was, at the time he was injured, observing due or ordinary care for his personal safety, and cite A. B. R. R. Co. v. Grimes, 13 Ill. 585; C. & M. R. R. Co. v. Patchin, 16 Id. 198; Dyer v. Talcott, Id. 300; G. & C. U. R. R. Co. v. Yarwood, 17 Id. 509; C., B. & Q. R. R. Co. v. Dewey, Admr., 26 Id. 255; C., B. & Q. R. R. Co. v. Hazzard, Id. 373; I. C. R. R. Co. v. Simmons, 38 Id. 242; C. & A. R. R. Co. v. Gretzner, 46 Id. 76; I. C. R. R. Co. v. Weldon, 52 Id. 294; I. C. R. R. Co. v. Schultz, 64 Id. 177; C., B. & Q. R. R. Co. v. Van Patten, Id. 510; C., B. & Q. R. R. Co. v. Lee, 68 Id. 579; T., W. & W. Ry. Co. v. McGinnis, 71 Id. 346; C. R. R. Co. v. Godfrey, 71 Id. 507; I. C. R. R. Co. v. Hall, 72 Id. 222; G. T., M. & T. Co. v. Hawkins, Id. 388; C. & A. R. R. Co. v. Becker, Admr., 76 Id. 31; T. W. & W. R. R. Co. v. Jones, Id. 315; O. & M. R. R. Co. v. Stratton, 78 Id. 88; C. & N. W. Ry. Co. v. Hatch, 79 Id. 137; C., B. & Q. R. R. Co. v. Harwood, 80 Id. 88; C., B. & Q. R. R. Co. v. Damerell et al., 81 Id. 450; I. C. R. R. Co. v. Green, Id. 19; Kepperly v. Ramsden, 83 Id. 354; I. C. R. R. Co. v. Lutz, 84 Id. 598; Ind. & St. Louis R. R. Co. v. Evans, 88 Id. 63; T. W. & W. Ry. Co. v. Grable, Id. 441; C., B. & Q. R. R. Co. v. Harwood, 90 Id. 425; Austin, Admx., v. C., R. I. & P. R. R. Co., 91 Id. 35; C. & A. R. R. Co. v. Pennell, 94 Id. 448; W. Ry. Co. v.

Elliott, 98 Id. 481; City of Joliet v. Seward, 99 Id. 267; City of Bloomington v. Perdue, Id. 329; Schmidt v. Sinnott, 103 Id. 160; C., B. & Q. R. R. Co. v. Johnson, Admx., Id. 512; City of Bloomington v. Chamberlin, 104 Id. 268; City of Chicago v. Stearns, 105 Id. 554; L. E. & W. Ry. Co. v. Zoffinger, 107 Id. 199; Mo. F. Co. v. Abend, Admr., Id. 44; C., B. & Q. R. R. Co. v. Warner, 108 Id. 538; C., B. & Q. R. R. Co. v. Avery, 109 Id. 314; W., St. L. & P. Ry. Co. v. Wallace, 110 Id. 114; Myers, Admx., v. I. & St. L. Ry. Co., 113 Id. 386.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

We do not understand counsel for appellant to dissent from the position of appellee, that in order to recover for injuries occasioned by negligence it must be alleged and proved that the party injured was at the time he was injured observing due or ordinary care for his personal safety.

What they do insist on is that the question of whether the party injured was at the time observing ordinary care for his personal safety, must always be submitted to a jury, and that there can be no conduct so reckless and indifferent to obvious danger that a court may pronounce the same to be clearly a want of ordinary care, and therefore refuse to submit the cause to a jury.

We understand the rule to be that whether a party was in the exercise of ordinary care is a question of fact, to be determined by the jury, and that it is only where the facts are such that a reasonable mind can draw from them but one conclusion, that negligence may be inferred as a matter of law; that where reasonable minds might differ, negligence is a question of fact. L. S. & M. S. Ry. Co. v. Johnson, 135 Ill. 641; I. C. R. R. Co. v. Nowicki, 46 Ill. App. 566; Chicago, St. Paul & Kansas City Ry. Co. v. Anderson, 47 Ill. App. 91; Lincoln Ice Co. v. Johnson, 37 Ill. App. 453; Chicago & Eastern Illinois Ry. Co. v. Connor, 119 Ill. 586; Chicago City Ry. Co. v. Robinson, 127 Ill. 12; Terre Haute & Ind. Ry. Co. v. Voelker, 129 Ill. 540; Abend v. Railroad Co., 111 Ill. 202; Simmons v. Ry. Co., 110 Ill. 340; Breeze v.

Powers, 80 Mich. 172–178; Cooley on Torts, 670–804 of 2d Ed.; Beach on Contributory Negligence, 454; Lake Shore Foundry Co. v. Rakowski, 54 Ill. App. 213.

The burden of showing that he was in the exercise of ordinary care is upon the party seeking to recover for a personal injury occasioned by the alleged negligence of another. Calumet Iron & Steel Co. v. Martin, 115 Ill. 358–370.

A bare scintilla of evidence is not enough to entitle a party to recover. Simmons v. Railroad Co., 110 Ill. 340–346; Bartelott v. International Bank, 119 Ill. 259–292; Phillips v. Dickinson, 85 Ill. 11–15.

While questions of negligence or of contributory negligence are ordinarily questions of fact to be passed upon by a jury, yet, when the undisputed evidence is so conclusive that the court would be compelled to set aside a verdict in opposition to it, the court may withdraw the case from the consideration of the jury, and direct a verdict. Railroad Co. v. Houston, 95 U. S. 697; Schofield v. Railway Co., 114 U. S. 615; Railroad Co. v. Converse, 139 U. S. 469; Aerkfetz v. Humphreys, 145 U. S. 418.

In the present case, it appears that appellant had for eighteen months continuously worked at the place, and in the doing of the very thing at which he was engaged when injured, in October, 1891; he was not only entirely familiar with the way in which the work of pushing up and removing these cars was done, but he had only a few months previous been injured, because an engine pushed a car up the incline, not easily, but so that it bumped. He also must have known that it is practically impossible for a locomotive to always push a train of heavy cars up an incline with such steady gentleness that they will not come with a force dangerous to a human limb if it be between the cars, and an object against which they are pushed; the daily observation of every one who witnesses the coupling of cars, even upon a level, teaches this.

Notwithstanding this, he stood with his foot upon the track upon which the cars were being pushed; stood so that the car holding the ladle upon which he was working,

being pushed, as his witness, the companion working with him, says, half an inch or an inch, his foot was caught under the wheel.

There is not a scintilla of evidence to show that there was any necessity for his placing his foot on the rail; his companion, doing the same work that appellant was, remained uninjured. Appellant was injured because his foot was on the rail; this, no reasonable, unbiased mind can doubt. His complaint is that no warning was given of the approach of the cars; he does not show that it was customary to give or that he had any reason to expect warning, and it clearly appears but that for his want of ordinary care he would not have been injured.

Appellant's counsel, in the reply brief by them filed, say that appellant flatly contradicts Polarck's statement that appellant had his foot on the rail. We have searched the record in vain to find such contradiction. Appellant did testify as follows:

"Mr. Brandt: Were you between the two rails of the track that this ladle was on? A. Yes."

This is very far from being, as counsel assert, a contradiction of the statement of plaintiff's witness, Polarck, that appellant had his foot on the rail. On the contrary, it is entirely consistent with Polarck's statement.

Undoubtedly, if there were any dispute in the evidence about this, on a motion to instruct the jury to find for the defendant, the doubt should be resolved in favor of the plaintiff.

The plaintiff, after Polarck had testified, was again called to the witness stand but failed to deny Polarck's statement, that he, appellant, had his foot on the rail.

Photographs of appellant's person, showing the scars thereon, etc., were used on the trial; these photographs are not included in the record, but there is a description given by appellant of the injury to, and scar upon his right foot, and from this it is manifest that it was cut while he was standing with it upon the rail.

Appellant testified:

"Q. Now then, tell how you were hurt; tell what the hurts were; I don't mean the manner. A. When I was struck I was dazed and I don't know what was the matter with me, and my partner dragged me from the track over to the scales, and then they notified the foreman Brady. * * *

Q. Whereabouts was the wound? How far did it extend? A. It was on the foot; right on top of the foot.

Q. Which foot? A. That was on the right foot.

Q. How far did it go back on the foot? A. The foot was sore up to the ankle, and it hurt me from about the knee and about the thigh; I struck my hip." * * *

"Mr. Brandt: I ask you this question, if this scar which appears—I want the jury to see that scar, the scar extending along the top of the foot from about the division between the second toe from the little one and running up to the ankle; was that scar on there or anything of the kind before the ladle ran on you in 1891? A. No, I didn't have any scar or mark before."

Upon cross-examination appellant testified:

"Mr. Prentice: You said at the time of the accident in October your foot was under the wheel when you fell. Do you mean that the wheel went over your foot completely?

A. No, the wheel stopped on my foot; I was crying aloud, and they stopped it.

Q. It just pushed your foot along the track a little way, was that it? A. No, I don't know."

If appellant was exercising ordinary care and appellee was guilty of negligence in moving the ladle, and appellant was injured in consequence thereof, then, as counsel for appellant urge, it is immaterial whether the ladle was moved an inch, "a yard or a mile." There is no direct evidence, save that of Polarck, as to the distance the ladle was moved, while there is evidence, undisputable, that appellant was not in the exercise of ordinary care.

As to the accident in May or July, 1891, this suit to recover for the accident of October, 1891, was begun December 14, 1891; a declaration based upon that accident only,

was filed January 6, 1892; the declaration was, on the 10th day of March, 1892, amended by the filing of additional counts, one of which was based upon the accident of July, 1891.

The case upon the accident by burning, seems to have been fairly tried and submitted, and we see no sufficient reason for interfering with the conclusion arrived at by the court and jury.

Appellant complains that the court refused to instruct or tell the jury that the plaintiff had not asked for any instructions. We do not think that a court should be required to do this.

Instructions should be given to the jury, not as the plaintiff's or defendant's, or as requested by either, but as given by the court. .

The judgment of the Superior Court is affirmed.

Mr. Justice Gary dissents.