## William H. Finley, Adm'r, etc., v. West Chicago St. R. R. Co.

1. VERDICTS—*When to be Directed for the Defendant.*—When the evidence given at the trial, with all the inferences that a jury can justifiably draw from it, is so insufficient to support a verdict for the plaintiff that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant.

2. EVIDENCE—*A Mere Scintilla of Evidence Not Sufficient.*—A mere scintilla of evidence means the least particle of evidence, which, without further evidence, is a mere trifle; and as the law does not regard trifles there is no reason why the court may not adjudge the same insufficient in law, and direct a verdict as in other cases where there is no evidence.

3. PRACTICE—*Upon Omission by Inadvertence to ask a Question.*—Where an attorney does not state that by inadvertence he had omitted to ask a question on direct examination, it rests in the discretion of the court to determine whether the question is to be permitted.

**Trespass on the Case.**—Death from negligent act.  Error from the Circuit Court of Cook County; the Hon. John C. Garver, Judge, presiding.  Heard in this court at the March term, 1900.  Affirmed.  Opinion filed July 16, 1900.

Joseph H. Lawler and William Street, attorneys for plaintiff in error.

John A. Rose and Louis Boisot, Jr., attorneys for defendant in error; W. W. Gurley, of counsel.

Mr. Presiding Justice Adams delivered the opinion of the court.

The plaintiff's intestate, Roger C. Finley, a boy about seven and one-half years of age, was killed by being run over by a motor car of defendant in error operated by electricity, at or near the intersection of Ogden and Spaulding avenues, in the city of Chicago, November 18, 1895, between four and five o'clock in the afternoon.  At the close of the evidence for the plaintiff, defendant's attorney moved the court to instruct the jury to render a verdict for the defendant, and presented to the court an instruction in writing to be given to the jury as follows:

"The court instructs the jury to find the defendant not guilty."

The court overruled the motion and refused the instruction, whereupon the defendant introduced evidence in its defense.  At the close of all the evidence the defendant made a similar motion, and presented to the court a similar instruction to be given to the jury.  The court granted the motion and gave the instruction.

The only question argued by counsel for the plaintiff is, whether the court erred in taking the case from the jury, the contention of plaintiff's counsel being that the court erred in so doing.

The question to be determined is, whether the evidence, with all the inferences which the jury might legitimately deduce from it, is so insufficient to support a verdict for the

plaintiff, that had such verdict been rendered, it would have been incumbent on the court to grant a new trial.

In Simmons v. Chicago & Tomah R. R. Co., 110 Ill. 340, the court say :

" There may be decisions to be found which hold that if there is any evidence—even a scintilla—tending to support the plaintiff's case, it must be submitted to the jury.   But we think the more reasonable rule, which has now come to be established by the better authority, is, that when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is so insufficient to support a verdict for the plaintiff, that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant."

The doctrine thus announced has been approved in the following and other cases:   Bartelott v. International Bank, 119 Ill. 271; Commercial Ins. Co. v. Scammon, 123 Ib. 605; People v. People's Ins. Exchange, 126 Ib. 468; C. & A. R. R. Co. v. Adler, 129 Ib. 339; Purdy v. Hall, 134 Ib. 303; Pullman Palace Car Co. v. Laack, 143 Ib. 251-2; Gartside Coal Co. v. Turk, 147 Ib. 122; L. S. & M. S. Ry. Co. v. Richards, 152 Ib. 72; Werk v. Ill. Steel Co., 154 Ib. 432; Cicero St. Ry. Co. v. Meixner, 160 Ib. 321-2; Schuermann v. Dwelling House Ins. Co., 161 Ib. 437; Wadsworth v. Laurie, 164 Ib. 50; Rack v. Chicago City Ry. Co., 173 Ib. 474; Offutt v. Columbian Exposition, 175 Ib. 474.

In C. & A. R. R. Co. v. Adler, *supra*, the court say :

" The rule is, that when the evidence given at the trial, with all legitimate inferences that may legally and justifiably be drawn therefrom, is insufficient to support a verdict for the plaintiff, so that if such a verdict be returned it must be set aside, the court is not bound to submit the case to the jury, but may and should, in such case, direct a verdict for the defendant."

In Gartside Coal Co. v. Turk, *supra*, this language occurs :

" It has been repeatedly held, and is a settled rule of practice, that it is only when the evidence, with all fair and legitimate inferences arising therefrom, is so far insufficient to sustain a verdict for the plaintiff that the court must

set it aside if rendered, that the court will be justified in directing a verdict for the defendant."

In Wadsworth v. Laurie, *supra*, the court, after discussing the case, say :

" Regarding the proof as a whole we are satisfied a verdict for the plaintiff would necessarily have been set aside. In such a state of case, it is proper to instruct the jury to find for the defendant."

Counsel for plaintiff contend that if there is any evidence, however slight, tending to support the plaintiff's case, the court can not legally take the case from the jury. We do not understand the law to be that if there is a mere scintilla of evidence tending to support the plaintiff's case, it must be submitted to the jury. The following cases are to the contrary : Simmons v. C. & T. R. R. Co., 110 Ill. 346; Bartelott v. International Bank, 119 Ib. 259, 272; Werk v. Ill. Steel Co., 154 Ib. 427, 432; Offutt v. Columbian Exposition, 175 Ib. 472, 475.

In the last case the court say :

" It is clear from the cases cited, and others, that what is called the ' scintilla rule of evidence ' is not in force in this State."

In the same case the court say :

" Much confusion has doubtless arisen from the different meanings attached to the phrase ' tending to prove,' but giving it the meaning as held by this court in the Bartelott case, above cited—that it is ' evidence upon which the jury could, without acting unreasonably in the eye of the law, decide in favor of the plaintiff or the party producing it'— most of the apparent conflict between the different cases disappears. Thus, it was said by Mr. Justice Maule in Jewell v. Parr, 13 Com. Bench, 909, 'Applying the maxim *de minimis non curat lex*, when we say that there is no evidence to go to the jury we do not mean that there is literally none, but that there is none which ought reasonably to satisfy the jury that the fact sought to be proved is established.' It is, of course, true that there are cases where there is literally no evidence in support of some material and necessary allegation, but there are many others where there may be some evidence tending in some remote degree to support every allegation, yet of too inconclusive and

unsubstantial a character to be the foundation of a verdict. In either of such cases the court may, when the question is properly raised, so determine, and direct a verdict as in cases where there is no evidence. A mere scintilla, of evidence, if it means anything, means the least particle of evidence—evidence which, without further evidence, is a mere trifle; and as the law does not regard trifles, we see no reason why, on such a motion, the court may not adjudge such evidence insufficient in law, and direct a verdict as in cases where there is no evidence. As well said in Connor v. Giles, 76 Me. 132, 'there is no practical or logical difference between no evidence and evidence without legal weight."

It appears from the evidence that Spaulding avenue is a north and south street, and that Ogden avenue at the place of the accident lies nearly east and west. In the present case Kittie Kilbridge, the only witness called by the plaintiff who claimed to have seen the accident, testified on direct examination, in substance, as follows: That she resided on Kedzie avenue, south of Ogden avenue; that Kedzie avenue lies east of Spaulding avenue; that she was coming home from the store and was on the south side of Ogden avenue about three lots west from the corner of Ogden and Spaulding avenues; that she saw a little boy come out of the store (meaning a store on the northwest corner of Ogden and Spaulding avenues); that "he walked over to the track, and when he got near the track he kind of jumped a little bit, and the car struck him and he was killed." Asked to describe the movements of the car from the first time she saw it until it struck the child, she answered:

" Well, I saw the car coming down the street, and I saw the child run out in front on the track, and the car was going very fast and did not stop until after it struck the child."

She further testified that when she first saw the car it was about two lots east of Spaulding avenue moving west, and that it struck the child near the corner of Spaulding and Ogden avenues. The following question was put and answer given:

" Q. Tell how the car went from the time you first saw it until it struck the child ? A. Why, I said it was going fast."

The witness also testified that she heard nothing in the car before it struck the child. On cross-examination the witness testified that when the boy walked toward the track he was facing south; that when he was within about three or four feet of the track he gave a little jump or jerk toward the west, and that, at that time, the car was right by the west cross-walk of the intersection of the avenues. She further testified that when the car stopped, after striking the boy, it was about six or eight feet east of Galter's grocery store. William H. Finley, plaintiff in error, is a civil engineer, and testified that Cullerton's store is on the northwest corner of the two avenues, and that Galter's store is 100 feet west of Cullerton's store on Ogden avenue. Mrs. Walter, a witness for plaintiff, testified that she was on Spaulding avenue south of Ogden avenue walking north, and saw the car cross Spaulding going west, and that it was moving very fast. She testified that on a former trial of the cause she testified that she was about half a block south of Ogden avenue when she saw the car cross Spaulding avenue. She further testified that she heard nothing as the car went by. Mrs. Walter was walking north on Spaulding avenue, pushing along a baby carriage with her little boy in it, and testified that she was not much interested in the car until it stopped.

Roger C. Finley, the deceased, was the son of the plaintiff, and the latter testified that Roger was a healthy boy, of average intelligence; that he lived with the plaintiff on the west side of Spaulding avenue south of Ogden avenue, and for two years prior to his death had attended a school on the west side of Spaulding avenue, north of Ogden avenue, the usual route to the school from his residence being along the west side of Spaulding avenue. Also, that plaintiff instructed Roger to be careful in crossing Ogden avenue or any street on which street cars were running.

The evidence for the defense was substantially as follows :

Weston Lovejoy, a newsboy, fourteen years old, testified that he was standing on the north side of Ogden avenue, between Spaulding avenue and Sawyer street, which is the next street east of Spaulding avenue; that he noticed the car going west; that when he first noticed the boy the car was right near him, exactly how near he did not know, but guesses about twenty-five feet; that the boy was then standing about fifteen ·feet from the track; that the car was moving slowly, faster than he, witness, could walk, but not faster than he could run, and that the car bell was ringing violently from the time it passed him, the witness, until it struck the boy. He says the ringing of the bell caused him to look west.

Mrs. Mary E. Tompkins testified that at the time of the accident she was living over a hardware store which fronts south on Ogden avenue, and is next west of the store on the northwest corner of Ogden and Spaulding avenues; that her attention was attracted by the ringing of a car gong, and she went to the window, when she saw the deceased standing on the curb north of the tracks and about sixty feet west of the west crossing of Spaulding avenue; and that he ran right ahead of the car and was struck. On her cross-examination this witness testified that the boy was standing till the car got almost abreast of him, when he jumped right in front of it; also that the car was running slowly from the time she first saw it, and that the gong was ringing very hard.

Patrick Considine, the motorman of the car which struck the boy, testified that when he first saw the boy the car was east of Spaulding avenue, and the boy was standing at the curb sixty feet west of Spaulding avenue; that he, the witness, then threw the power off and sounded the gong; that the boy seemed to be looking at him; that when the car was within eight or nine feet of the boy, the latter ran right across the street, and that when he, the witness, saw him start, he kept ringing the bell, and halloed to him, and put on the brakes. He also testified that from the time he threw off the power east of Spaulding avenue, the power

was off and the car "running of its own speed," and that it was running about one mile an hour when it crossed Spaulding avenue, and ran a couple of feet after striking the boy.

The evidence of Kittie Kilbridge, the only witness produced by plaintiff who saw the accident, is clearly insufficient to prove negligence on the part of the defendant; on the contrary, it would appear from her evidence that as the car was moving west, the plaintiff's intestate jumped on the track and was struck. It is true that she and Mrs. Walter both testify that the car was going very fast, but this might be true, and yet the rate of speed not unreasonable. If the deceased got on the track at about the time the car reached where he was, as would seem to have been the case from the evidence of Kittie Kilbridge, it does not appear that the accident could have been prevented. She testified that the boy was struck about the west crossing of Spaulding avenue, and that the car was near that crossing when the boy, having been three or four feet from the track, jumped, and was struck. Taking the entire evidence for both parties together, we are inclined to the opinion that it does not tend to prove negligence on the part of the defendant, and think it clear that the evidence, with all inferences which can be legitimately deduced from it, is so insufficient to support a verdict for the plaintiff, that had such verdict been rendered, it would have been the duty of the court to set it aside and grant a new trial. Lawler, a witness for plaintiff, was asked, on his re-direct examination, this question: "While the car was on this boy, did you have any conversation with the motorman?" The court sustained an objection to the question. There was nothing in the cross-examination of the witness on which to base the question on re-direct examination. The attorney for the plaintiff did not state that, by inadvertence, he had omitted to ask the question on direct examination, and it rested in the discretion of the court to determine whether the question would be permitted. But, even though the question had been regularly put, we could not hold it reversible error to rule against it, because the

376    APPELLATE COURTS OF ILLINOIS.

VOL. 90.] Am. Hydraulic Dredging Co. v. Richardson Fueling Co.

attorney did not state what he expected to prove by the witness, and therefore it can not be known whether the plaintiff was prejudiced by the ruling. No other ruling in regard to the admission or exclusion of evidence is mentioned, as referred to, in the brief or argument of plaintiff's counsel. The judgment will be affirmed.