## William Grace Company v. Henry Kane.

### Gen. No. 12,798.

1. ASSUMED RISK—*what does not preclude operation of doctrine of.* If a servant knowing the hazards of his employment, as the business is conducted, is injured while engaged therein, he cannot maintain an action against the master for the injury merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury.

2. SAFE PLACE TO WORK—*when master not obligated to furnish.* Where a servant is engaged in the business of wrecking a building, his master is not obligated to furnish him with a safe place to work.

Action in case for negligence. Appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the October term, 1905. Reversed. Opinion filed October 29, 1906.

Statement by the Court. This is an appeal from a judgment for $2,000 recovered by appellee in a suit by him against appellant for alleged negligence. The declaration contains two counts, in which it is averred, in substance, as follows:

First count: January 14, 1904, the defendant was taking apart the wreckage from a building in the town of Cicero, in Cook county, Illinois, which had partially collapsed during its construction, wherein were certain perpendicular columns, beams, girders, trusses

and other materials, which had formed certain angles, the perpendicular columns or beams standing erect, or in a slanting position, and some of the other beams, girders, etc., which had been used in the construction of the building, were in a state of collapse on the ground, in such position as to be highly dangerous to persons working about or near the same. The plaintiff, at the time aforesaid, was the hired servant of the defendant, and was ordered by it to work on said wreckage and to assist in jacking certain beams, columns, etc., and while plaintiff was, in obedience to said order, assisting in jacking said beams, etc., and was exercising due care for his safety, the defendant negligently and carelessly failed to exercise reasonable care to remove, take apart or jack said wreckage, so that it would not endanger the persons working thereon; but permitted the same to be and remain so as to be dangerous to the plaintiff, the dangers whereof were unknown to the plaintiff, but were well known to the defendant, or by reasonable diligence might have been known to it, "and, by means of the premises, while the plaintiff was so working and being at said jack, as aforesaid, the said columns, beams, girders, materials and wreckage contained therein, when a certain beam or header sprang, fell or otherwise struck against and upon said wreckage or beams, columns and materials, and there caused one of said beams or columns or headers, or some of them, to be precipitated upon the left foot of the plaintiff," etc., in such manner as to cause said foot and the toes thereof to be crushed and mangled, etc.

The second count is substantially the same as the first.

The defendant pleaded the general issue.

The iron framework of the contemplated building was substantially complete when it collapsed. The structure was about 700 feet in length from east to west, and about sixty-five feet in width from north to south. There were two rows of columns, one row

on the south and the other on the north side. These columns were forty-five feet high and were about twenty-two feet apart. Reaching from the tops of the forty-five foot columns on the south side to those on the north side were steel trusses. Outside the lines of the forty-five foot columns, and about thirty-five feet distant from and opposite them, on the north and south sides, were columns about twenty-five feet high, which carried small trusses running from the higher to the lower columns on the north and south sides. The small trusses were fastened to the large and small columns by bolts or rivets. About twenty feet above the ground twenty inch I beams, about twenty-two or twenty-three feet in length, called headers, were bolted to the forty-five foot columns at the south side. The north ends of the floor beams were intended to rest on a wall, which had not yet been built, and those ends were resting temporarily on timbers. The work collapsed about the middle of November, 1903. Robert Martin, head foreman of the defendant, called by the plaintiff, testified that the building fell toward the east, and that, from appearances, he would judge that the collapse started by the falling of one truss against the one next east of it and so, successively, till they all fell; that none of the large columns on the north side fell, but fifteen or twenty of those on the south side did, and that, when the building fell it lurched over to the center of the building, and all the large trusses on the north side "doubled up like a book when they hit the ground," and that, when the large columns on the south side fell they turned the floor beams which were attached to them up, so that the beams stood upright, that they were bolted to the headers at their lower ends "and sticking into the air." This witness thus concludes his description of the collapse: "When the arches and trusses and posts went down in the collapse, they were all twisted and broken up in bad shape. It was a general mass of twisted steel and iron."

The plaintiff when injured, January 14, 1904, was working at a header between two of the south forty-five foot columns, the header and columns lying on the ground. The defendant's counsel, at the close of the plaintiff's evidence, moved the court to instruct the jury to find the defendant not guilty, and presented an instruction in writing to that effect, which motion and instruction the court denied and refused, and the defendant rested, and the jury, after having been instructed by the court, found the defendant guilty.

ELBRIDGE HANECY, F. J. CANTY and J. C. M. CLOW, for appellant.

PETER MONTAGUE, for appellee; THEODORE G. CASE, of counsel.

MR. JUSTICE ADAMS delivered the opinion of the court.

The contentions of appellant's counsel are that appellant was not guilty of negligence, that appellee assumed the risk of the work, and that the court erred in the admission of evidence for appellee, and in refusal to take the case from the jury.

Appellee was employed by appellant January 13, 1904, after the appellant's other employes had been working sometime in clearing away the wreckage. He worked all day on the 13th and worked a little more than an hour on the 14th, when the accident happened. He testified that Allen, who was foreman under the head foreman, Martin, told him to get a stone jack and jack out the header from a column; that the east end of the header was riveted to the column, but the west end was not; that it had been disconnected from the column at that end, and was loose and resting on the flange of the column, the column on which it was resting being flat on the ground, and that he, appellee, was using the jack to get it off the flange of the column, on which it had a bearing of about two

William Grace Co. v. Kane.

inches, and that the header was up four or five inches from the ground; that he got the jack and placed it temporarily on top of the header, he being at one end of the header and one Walsh at the other, when he heard a crash and the header fell on his foot.    It was between two of the south line of the forty-five foot columns where the accident occurred.  Appellee testified that he was standing on the south side of the header and clear of it, that he thinks he was about two feet away from it, but it struck diagonally across the toes of his foot; that it struck the big toe, the one next to it, and half of the next one. It would seem from the evidence that appellee must have been mistaken in testifying that he was clear of the header, and about two feet away from it, and that it lurched diagonally toward him.  The header was only five or six inches above the ground and its east end was riveted fast to the column; therefore, when the west end fell from the flange of the column on which it rested, it would seem that it could not have moved at an angle, or, as plaintiff expresses it, diagonally, but must have fallen perpendicularly, in which case it would not have fallen on appellee's toe, had he been standing away from it. Appellee testified that he was a structural iron worker, had learned the trade, and had worked at it three years at the time of the accident, and Martin, the head foreman, testified that Allen, foreman under him, and all the employes, of whom there were ten or twelve, were structural iron workers.  Appellee was employed to assist in the removal of the wreckage, and the order of Allen, his foreman, to get a stone jack and jack out the header from the column was part of the work which he had been employed to do and which, by his contract of employment, he had undertaken to do.  He testified: ''In learning my trade I learned all the necessary parts of the trade, so as to follow the business of the work as a structural iron worker.  I learned all the different departments

where workmen in that line are supposed to work. I learned everything that was necessary to do the different kinds of work in the different departments that a journeyman structural iron worker has to work at. * * * I knew what the purpose was of wrecking this building. I knew we were to take the different pieces apart and clear the place away. There may have been ten or twelve of us. We were all structural iron workers."

It was daylight all the time appellee was working up to the time of the accident. It thus appears from his own evidence that he knew what was to be done, what was being done, and the manner of doing it.

George R. Hayes, witness for appellee, testified that he and one McAuley were working one or two sections of twenty or twenty-two feet each east of where appellee was, and were engaged in separating the floor beams from a header; that the part where he was working was connected with the part where appellee was, and that the first floor beam, which witness and McAuley cut loose, fell east and knocked others over, and that moved all the iron enough to disconnect the header where Kane was. In other words, the iron, which was east of the header where appellee was and connected with it, fell east, and in falling drew east with it the header where appellee was, thus drawing the west end of that header off the flange of the column on which it had a bearing of two inches. Martin's testimony is substantially the same as to the cause of the accident, so that it was caused immediately by fellow-servants of appellee, who were acting in the line of their duty and, apparently, without negligence.

In Gulf C. & S. F. Ry. Co. v. Jackson, 65 Fed. R. 45, the court say: "It frequently happens that men are employed to tear down buildings, or other structures, or to repair them, after they have become insecure; or it may be that the work undertaken by the employe is of a kind that is calculated to render the premises or place of performance, for the time being, to some ex-

tent insecure. In such cases as these the servant undoubtedly assumes the increased hazard growing out of the defective or insecure condition of the place where he is required to exercise his calling," citing, among other cases, Armour v. Hahn, 111 U. S. 313. Appellee saw and must have known the conditions of the wreck when he undertook the work, or, at least, he had ample opportunity to observe and know such conditions, and risks incident to his employment were assumed by him. P. D. & E. Ry. Co. v. Hardwick, 53 Ill. App. 161; Richardson v. Anglo-American Provision Co., 72 ib. 77; Westville Coal Co. v. Milka, 75 ib. 638; Simmons v. Chicago & T. R. R. Co., 110 Ill. 340-347.

In the last case the court, quoting from 90 Ill. 334, say of a servant: "If he has full knowledge of all the perils of a particular service, he may decline to engage in it, or require that it shall first be made safe; but, if he does thus enter in it, he assumes the risk, and must bear the consequences. And in St. Louis & Southeastern Ry. Co. v. Britz, 72 Ill. 261, there was approval of the rule laid down in Wharton on Negligence, Sec. 214, that "when an employe, after having the opportunity of becoming acquainted with the risks of his situation, accepts them, he cannot complain if he is subsequently injured by such exposure.' To the same effect are Clark v. Chicago, Burlington & Quincy R. R. Co., 92 Ill. 43, and Camp Point Manfg. Co. v. Ballou, 71 id. 418."

Martin, the head foreman, testified that he instructed Allen, appellee's immediate foreman, to guy the floor beams, in taking them down, and to take them down one at a time, and on being asked, "How many guy ropes should there have been?" he answered over the objection of appellant's counsel, "There should have been four at least." A motion to strike out the answer was overruled by the court. Appellee's counsel rely on Allen's failure to obey this order, saying that "as a result thereof appellee sustained the

injuries complained of.'' In Simmons v. Chicago & T. R. R. Co., *supra,* there was evidence that there was a safer way to do the work than that adopted, in respect to which the court say: ''If a servant knowing the hazards of his employment, as the business is conducted, is injured while engaged therein, he cannot maintain an action against the master for the injury merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury.'' 110 Ill. 347.

In view of this language, the evidence of Martin in regard to his directions to Allen was immaterial and irrelevant. The motion to take the case from the jury operated as a demurrer to the evidence, and the trial court, in passing on that motion, could have considered whether the evidence was or was not competent.

Appellee's counsel seem to rely somewhat on the doctrine that it is the duty of the master to furnish to the servant a safe place in which to work. That doctrine does not apply to a case like the present. Gulf, etc., Ry. Co. v. Jackson, 65 Fed. R. 48; Armour v. Hahn, 111 U. S. 313-318; 2 Bailey's Pers. Injuries, sec. 3024; Western Wrecking Co. v. O'Donnell, 101 Ill. App. 492; Richardson v. Anglo-Am. Prov. Co., 72 ib. 77; Chicago Edison Co. v. Davis, 93 ib. 284.

Our conclusion, for the reasons stated, is that the court erred in overruling appellant's motion to take the case from the jury. Therefore, the judgment will be reversed.

*Reversed.*